CHARLES G. HARRIS *v.* SECOND NATIONAL BANK.

(*Jackson.* April Term, 1903.)

1. **BANKRUPTCY.** Evidence sufficient to show preferential payment.

Where a debtor to a bank consulted with its cashier with reference to obtaining an extension of time from his other creditors, and the cashier was also aware that the debtor had asked an extension of time and additional line of overcheck with his bank, which, on instructions of the finance committee, the bank had declined to grant, after which the debtor offered to sell his stock of goods to the bank, but it declined to buy, when the cashier advised the making of a general assignment, but instead of this, the debtor sold his stock of goods for a sum equal to his indebtedness to the bank, with which sum he discharged his said indebtedness to the bank, within four months before the filing of a petition in bankruptcy, the evidence was sufficient to show that the bank had reasonable ground for believing that a preferential payment was intended, in the sense of bankruptcy law. (*Post, pp.* 243-244.)

Cited and construed: Bankruptcy Law, Act July 1st, 1898 (30 Stat., 562, c. 541.), sec. 60b.

2. **SAME.** Same. Preferential payment to holder of note though the indorser is solvent.

The rule as to preferential payments within the sense of the bankruptcy law is not changed by the fact that the payment is made by the maker to the holder of the indorsed note, though the indorser thereon is liable and solvent; and in case of such preferential payment the trustee in bankruptcy may recover from such holder such preferential payment. (*Post, pp.* 244-246.)

Harris v. Bank.

Case cited and approved:   Bartholow v. Bean, 18 Wall., 635.

Cited and construed:   Bankruptcy Law of 1868 (15 Stat., 227, c. 258); Bankruptcy Law of 1898 (30 Stat., 562, c. 541), sec. 60b.

3. **SAME. Same. Same. Indorser is not released by holder's refusal to accept preferential payment.**

Where the holder of a note refuses to receive a preferential payment in the sense of the bankruptcy law, which furnishes the paramount rule of conduct for all the parties to the transaction, the indorser thereon can not rely upon the refusal to accept such tendered payment as a defense to a suit against him by the holder.   (*Post, pp.* 244-247.)

Case cited and approved: · Bartholow v. Bean, 18 Wall., 635.

Cited and construed:   Bankruptcy Law of 1868 (15 Stat., 227, c. 258); Bankruptcy Law of 1898 (30 Stat., 562, c. 541), sec. 60b.

4. **SAME. Same. Same. Same. Holder's acceptance of preferential payment leaves him without remedy against indorser or bankrupt's estate.**

Where a holder of a note receives a preferential payment, he makes himself liable to a judgment for the amount in favor of the bankrupt's assignee, and loses his right to recover either of the indorser or of the bankrupt's estate.   (*Post, pp.* 244-247.)

Case cited and approved:   Bartholow v. Bean, 18 Wall., 635.

Cited and construed:   Bankruptcy Law of 1868 (15 Stat., 227, c. 258); Bankruptcy Law of 1898 (30 Stat., 562, c. 541), sec. 60b.

5. **SAME. Original debt not set off against preferential payment sued for.**

In a suit by the trustee in bankruptcy to recover the preferential payment, the creditor of the bankrupt can not set off the debt on which the alleged preferential payment was made in violation of the bankruptcy law.   (*Post, pp.* 247-250.)

Cited and construed:   Bankruptcy Law (July 1, 1898, 30 Stat., 565, c. 541), sec. 68.

Harris v. Bank.

Cases cited, approved and distinguished; Re Little (D. C.), 110 Fed., 621; Re Myers (D. C.), 99 Fed., 691.

6. **SAME.**  Preferential creditors must surrender preferences before proving claims against bankrupt's estate.

A claim of the creditor, who has received a preference, is not provable in bankruptcy unless the preference be surrendered. The rule applies even though the preference was innocently received.  (*Post, p.* 250.)

Cited and construed:  Bankruptcy Law (July 1, 1898, 30 Stat., 560, c. 541), sec. 57g.

Case cited and approved:  Pirie, Scott & Company v. Chicago Title and Trust Company, 182 U. S., 438.

FROM MADISON.

Appeal from the Chancery Court of Madison County. —A. G. HAWKINS, Chancellor.

TAYLOR & BIGGS, and CARUTHERS & MALLORY, for Harris.

HAYS & BIGGS, for Second National Bank.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

Harris, as trustee in bankruptcy of Rosa D. Prewitt, exhibited this bill against the Second National Bank of

Jackson, to recover the sum of $3,100 alleged to have been paid said bank by Mrs. Prewitt in discharge of a pre-existing debt, averring that said payment was an unlawful preference within the meaning of the bankrupt act. The chancellor pronounced a decree in favor of the complainant. Defendant appealed, and has assigned errors.

It. appears from the record that prior to the 18th of September, 1900, Mrs. Rosa D. Prewitt had been conducting a dry goods business in the city of Jackson, under the firm name and style of J. J. Prewitt & Co. Mrs. Rosa D. Prewitt alone constituted the firm, although her husband, J. J. Prewitt, was her active business manager. The business had been carried on in Jackson for at least 2½ years before the firm was adjudged bankrupt. Mrs. Prewitt transacted her banking business with the Second National Bank, and became indebted to said bank in the sum of $3,500 by note, on which J. T. Rushing, J. T. Jones, and R. E. Prewitt were sureties. Mrs. Prewitt was also allowed the privilege of overchecking her account to the amount of $500 at the date of these transactions, and, in addition to the note already stated, she was indebted to the bank by overcheck in the sum of about $600, and also by note for $795, indorsed by J. T. Rushing. It appears that in the summer of 1900 a payment of $1,000 was made on the $3,500 note, reducing it to $2,500. In July or August of that year Mrs. Prewitt, through her husband, made application to the bank to increase her line of overcheck

to the amount of $800, which request was granted, but very soon thereafter (in August) this concession was withdrawn, and Mrs. Prewitt was requested by the cashier of the bank not to exceed the former limit of $500. It appears at this time Mrs. Prewitt was largely indebted, and, being pressed by her creditors, was very anxious to obtain an additional line of overcheck, but the matter, after being submitted to the finance committee of the bank and investigated, was declined. Very soon thereafter Mrs. Prewitt, after consultation with Mr. Polk, cashier of the bank, sold her entire stock of merchandise, comprising her entire assets, to one R. E. McKinney, for the sum of $3,100, and this money she turned over to the Second National Bank, paying off the overcheck of $600, and the balance of $2,500 on the note. Within a few days thereafter her creditors forced her into involuntary bankruptcy, and she was duly adjudged a bankrupt. The trustee appointed under said proceedings thereupon instituted this action to recover the sum of $3,100 paid to the bank as an unlawful preference.

Section 60b of the bankrupt law (Act July 1, 1898, 30 Stat. 562, c. 541 [U. S. Comp. St. 1901, p. 3445] provides if the bankrupt shall have given a preference within four months before the filing of the petition, or after the filing of the petition and before the adjudication, and the person receiving it or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and

he may recover the property or its value from such person.

It is insisted on behalf of the bank that there is no evidence in the record showing that the bank or any of its officers knew or had reasonable cause to believe that Prewitt & Co. were insolvent at the time the note and overcheck were made.

We are constrained to believe from the proof that the cashier, at the time he received the payment, was fully aware of the insolvency of this debtor, and that the money received from the sale of the stock of merchandise constituted the entire assets belonging to the bankrupt. The record shows that the cashier had been consulted by Prewitt with reference to obtaining an extension of time from the creditors of Prewitt & Co. living in St. Louis and Louisville. The cashier was also aware that Mrs. Prewitt had asked an extension of time and additional line of overcheck with the Second National Bank, which that bank, on instruction of the finance committee, had declined to grant. The proof further shows that, after Mrs. Prewitt had failed to get an additional line of credit from the bank, that she offered to sell the stock of goods to the bank, but that it declined to buy, and the cashier admits that, when the bank declined to make a further advance, he said to Mr. Prewitt: "I believe it would be best to make a general assignment and get matters settled up." Surely, in view of all these facts, the bank had, in the

language of the bankrupt act, reasonable cause to believe a preference was intended.

It is argued, however, that the bank was constrained to accept payment of the balance due on the $3,500 note, or thereby release the sureties. The argument is that, the note due the bank being amply secured by personal indorsers, the bank was not the party to be benefited within the meaning of said section, but that the trustee ought to have brought this suit against J. T. Jones, J. T. Rushing, and R. E. Prewitt, the sureties on said note, as the parties who had been benefited. Section 60b of the bankrupt law provides that a recovery may be had by the trustee from the party receiving the preference or to be benefited thereby. The question now made was before the supreme court of the United States, under the act of 1868 (15 Stat. 227, c. 258), in the case of *Bartholow* v. *Bean,* 18 Wall., 635, 21 L. Ed., 866.

It was argued in that case that the bank was not benefited by the payment, because it was secured by a solvent indorser, and that it was constrained to receive the payment when tendered, else the sureties would have been discharged. Mr. Justice Miller, in delivering the opinion of the court, said, in part, as follows: "Does the fact that Wilcox, the indorser, was solvent, and was liable, change the rule as to payment as a preference?

"The statute in express terms forbids such preference, not only to an ordinary creditor of the bankrupt, but to any person who is under any liability for him and it not only forbids payment, but it forbids any transfer or

pledge of property as security to indemnify such persons. It is therefore very evident that the statute did not intend to place an indorser or other surety in any better position in this regard than the principal creditor, and, that if the payment in the case before us had been made to the indorser, it would have been recoverable by the assignee. If the indorser had paid the note, as he was legally bound to do, when it fell due, or at any time afterwards, and then received the amount of the bankrupt, it could certainly have been recovered of him; or if the money had been paid to him directly instead of the holder of the note, it could have been recovered; or if the money or other property had been placed in his hands to meet the note or to secure him, instead of paying it to the bankers, he would have been liable. He would not, therefore, have been placed in any worse position than he already occupied, if the holders of the note had refused to receive the money of the bankrupt. It is very obvious that the statute intended, in pursuit of its policy of equal distribution, to exclude both the holder of the note and the surety or indorser from the right to receive payment from the insolvent bankrupt. It is forbidden. It is called a fraud upon the statute in one place, and an evasion of it in another. It was made by the statute equally the duty of the holder of the note and of the indorser to refuse to receive such a payment.

"Under these circumstances, whatever might have been the right of the indorser, in the absence of the bankrupt law, to set up a tender by the debtor, and a refusal of

the note holder to receive payment, as a defense to a suit against him as indorser, no court of law or equity could sustain such a defense, while that law furnishes the paramount rule of conduct for all the parties to the transaction, and when in obeying the mandates of that law the indorser is placed in no worse position than he was before; while by receiving the money the holder of the note makes himself liable to a judgment for the amount in favor of the bankrupt's assignee, and loses his right to recover either of the indorser or of the bankrupt's estate.

"We are of opinion, therefore, notwithstanding the hardship of the case, which is more apparent than real, that the payment must be held to be a preference within the bankrupt law, and that the judgment of the court below, that the assignee should recover it, must be affirmed."

The third assignment of error is that the court should also have adjudged that, inasmuch as Prewitt & Co. were insolvent, the bank had the equitable right of mutual offset, and the trustee could not recover this amount from the bank while the bankrupt was indebted to it for a larger amount. This assignment of error is based upon section 68 of the bankrupt law (30 Stat. 565, c. 541 [U. S. Comp. St. 1901, p. 3450]), as follows: "(a) In all cases of mutual debts or mutual credits between the estate of the bankrupt and the creditor, an account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

(b) A set off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which is not provable against the estate or was purchased by or transferred to him after the filing of the petition, or within four months before such filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy."

We are of opinion, however, that this record does not present a case of mutual debts and credits, within the meaning of the sections referred to. The fact is the estate of the bankrupt herein is not indebted to the bank, that indebtedness having been paid off and discharged.

As said in Loveland on Bankruptcy, sec. 127: "Under the mutual credit clause, a creditor having a preference cannot set off an individual debt in a suit by the trustee to set aside such preference. The reason is that the debts are not mutual nor in the same right. The preference which is being avoided is a debt between the preferred creditor and the general creditors—not the bankrupt. The individual debt is between the preferred creditor and the bankrupt. The trustee holds one of the debts as the representative of the general creditors, and the other as the representative of the bankrupt." The only set-off provided by the bankrupt law in such cases is as follows: "If a creditor has been preferred, and afterwards in good faith gives the debtor further credit without security of any kind for property which has become a part of the debtor's estate, the amount of such new credit remaining unpaid at the time of the ad-

Harris v. Bank.

judication in bankruptcy may be set off against the amount which would otherwise be recoverable from him."

The mutual debit and credit clause invoked by defendant's counsel herein has reference to a case where the third party is indebted to the bankrupt, and the bankrupt is indebted to that third party. Now, before the third party can be called on to account for its indebtedness to the bankrupt, a balance of mutual debits and credits must be struck, and, if there is a balance due the bankrupt, then the third party becomes liable for its payment.

The cases cited, Re Little (D. C.), 110 Fed., 621, and Re Myers (D. C.), 99 Fed., 691, are not applicable in the present instance. It appeared in that case that the bankrupt, at the time the petition was filed, had money on deposit in the bank. He was also indebted to the bank.

It is well settled that the relation of the bank to the depositor is that of debtor and creditor, and the bank is the debtor of the depositor. In that case, the trustee undertook to recover from the bank the amount on deposit in the bankrupt's name as a debt owing by the bank to the bankrupt's estate, and the bank claimed the right to set off against the deposit the amount the bankrupt owed it, and it was allowed.

This is not a case in which there were mutual debits and credits between the bankrupt and the bank. This is simply a case in which the bank-

rupt made a preferential payment to the bank, whereby the bank, in contravention of the bank- rupt law, received a larger percentage on its debt than other creditors. Such a preference, under the bankrupt act, is voidable at the election of the trustee. If, as contended by learned counsel for the bank, the bank is now entitled to set off against the claim of the trustee the indebtedness of the bankrupt to the bank, it would virtually wipe out the section of the bankrupt act making unlawful preferential payments, and thereby defeat the object of the bankrupt law, which is to secure an equal distribution of the assets of the failing debtor.

Moreover, debts or credits, in order to be set off, must be such claims as are provable in bankruptcy. The au- thorities are that the claim of a creditor who has re- ceived a preference is not provable in bankruptcy unless the preference be surrendered. Section 57g of the bank- rupt act (30 Stat. 560, c. 541 [U. S. Comp. St. 1901, p. 3443]) provides as follows: "The claims of creditors who have received preferences shall not be allowed un- less such creditors shall surrender their preference." The rule applies even though the preference was inno- cently received. *Pirie, Scott & Co. v. Chicago Title & Trust Co.*, 182 U. S., 438, 21 Sup. Ct., 906, 45 L. Ed., 1171.

The result is, the decree of the chancellor is affirmed.