IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## WESTERN DIVISION.

---

### JACKSON, APRIL TERM, 1906.

---

THE SECOND NATIONAL BANK *v.* R. E. PREWITT et al.

## (*Jackson.* April Term, 1906.)

1. **ACCOMMODATION INDORSERS OR MAKERS.** Not discharged by principal's payment subsequently recovered from the payee by the maker's trustee in bankruptcy as a preference.

   The payment of a promissory note by the principal maker does not operate to release or discharge the accommodation indorsers or makers, where, upon a petition in bankruptcy filed by other creditors against the principal maker within four months thereafter, he was duly adjudged a bankrupt, and the amount of such payment was recovered by the trustee in bankruptcy from the payee as a preference under the bankruptcy law, although such payee knew of the payor's insolvency. (*Post, pp.* 3-11.)

   Cases cited and approved: Swarts v. Fourth National Bank, 177 Fed., 1, 9-13, 54 C. C. A., 387, and citations; Watson v. Poague, 42 Iowa, 582, 583; Pritchard v. Hitchcock, 6 Man. & G., 151; Petty v. Cooke, L. R., 6 Q. B., 790, 794-796.

117 Tenn—1           (1)

Bank v. Prewitt.

Cases cited and distinguished:  Harris v. Bank, 110 Tenn., 239; Bartholow v. Bean, 18 Wall., 635.

2.  **SAME.**  Same.  Discharged to extent of pro rata lost by holder's failure to file claim against the bankrupt estate of the principal maker.

Where the holder of a promissory note, after receiving payment from the principal maker, and after being compelled to restore the amount thereof to such maker's trustee in bankruptcy as a preference, fails to file his claim against the bankrupt's estate, he can recover from the accommodation indorsers or' makers only upon the basis of allowing a credit for the sum he would have received from the bankrupt's estate, had he filed his claim against the same.  (*Post, p. 11.*)

3.  **SAME.** Discharged by holder's refusal to accept payment before maturity under a collateral agreement operating as a security for them.

A collateral agreement between the purchaser of a promissory note and principal maker to the effect that such maker should have the right to pay the note before maturity, with a rebate of interest, is in the nature of a security or counter-security for the benefit of the accommodation indorsers or makers, and a refusal to accept such payment would discharge them.  (*Post, pp. 3, 4, 5.*)

---

FROM MADISON.

---

Appeal from Chancery Court of Madison County.— A. G. HAWKINS, Chancellor.

W. H. BIGGS, for complainant.

C. G. BOND, for defendants.

MR. JUSTICE NEIL delivered the opinion of the Court.

On the 19th of January, 1900, Prewitt & Co. executed to the order of J. T. Rushing, R. E. Prewitt, and J. T. Jones, a note in the sum of $2,500, maturing twelve months after date. This note was indorsed by the payees, waiving demand and notice, to the Second National Bank. The indorsers had no beneficial interest in the transaction, the note having been made merely for the accommodation of Prewitt & Co. When the note was negotiated to the bank, there was a collateral contract entered into between it and Prewitt & Co. to the effect that the latter should have the right to pay the debt before due, and to have a rebate of interest from the time between the date of payment and maturity.

On the 18th of September, 1900, Prewitt & Co., through their representative, J. J. Prewitt, claimed of the bank the right to pay off the note, and were permitted to do so; a rebate of $68 being allowed for the difference of time.

Within a few days after this payment, the creditors of Prewitt & Co. filed a petition in bankruptcy against them, and they were duly adjudged bankrupt. An action was brought by Harris, the trustee in bankruptcy, against the bank, and he recovered in this action the full amount which had been paid to the bank. The aggregate was $3,100, and interest. This included not only the payment on the $2,500 note, but likewise payment of an overdraft of about $600; and part payment of a note of $795, indorsed by J. T. Rushing.

The controversy in the *Harris Case* is reported under the name of *Harris* v. *Bank,* 110 Tenn., 239, 75 S. W., 1053.

The amount recovered from the bank was paid into the bankruptcy court, and was there prorated among the other creditors of Prewitt & Co., the bank not having filed any claim.

After the bank had paid the judgment, it brought the present suit against R. E. Prewitt and J. T. Rushing, indorsers on the $2,500 note, to recover two-thirds thereof; the other indorser, J. T. Jones, having already paid one-third without suit.

The defendants insist that they are not liable and refer for authority to *Harris* v. *Bank,* supra. In that case, the court did not have before it the question here presented, and what was said upon the liability of indorsers, appeared only in a quotation from *Bartholow* v. *Bean,* 18 Wall. (U. S.), 635, 21 L. Ed., 866. There is nothing in the opinion in *Harris* v. *Bank* that in any way bears upon the present controversy, except the observation that the bank was not compelled to accept payment of the amount of the note on penalty of releasing the indorsers. In the present case, it appears there was a collateral agreement between the bank and the makers to the effect that the makers would have the right to pay the note before maturity and obtain a rebate. This agreement was in the nature of a security or counter-security for the benefit of the indorsers, and if the bank

had refused to accept the money thereon, the indorsers could afterwards have claimed a release.

The bank was, then, in this position. A valid payment was offered to it, which it dared not refuse on penalty of losing its indorsers. It is said, however, that Prewitt & Co. were insolvent, and the bank knew such to be the fact. This is true, but there might never be any proceeding in bankruptcy instituted against them. In that event, the payment would continue good. The indorsers were entitled to this benefit, and if the bank had refused when offered, they would have had just ground of complaint. What was said in *Bartholow* v. *Bean* as to the nonliability of the indorser was mere *dictum*. The case did not call for it. The action there was by the assignee in bankruptcy against a creditor who had received a preference to recover the amount so paid. No question of the liability of an indorser was involved. See, on the general subject, *Swarts* v. *Fourth National Bank,* 117 Fed., 1, 9-13, 54 C. C. A., 387; and cases cited; *Watson* v. *Poague,* 42 Iowa, 582, 583; *Pritchard* v. *Hitchcock,* 6 Man. & G., 151; *Petty* v. *Cooke,* L. R., 6 Q. B., 790, 794-796.

The facts in *Watson* v. *Poague et al.* were these: Watson held a promissory note for $500 executed jointly by Poague, and Wood and one John W. Griffith. After the note became due, Griffith made a payment of $409.95 on it, and within four months thereafter was adjudged a bankrupt on the petition of creditors other than Watson. After the adjudication in bankruptcy, Poague and

Wood paid to Watson's clerk, who was ignorant of the circumstances, the residue of the note, and took it up. The assignee in bankruptcy recovered of Watson the amount which had been paid him by Griffith. Watson thereupon brought his suit in equity against Poague and Wood, praying that they be ordered to deliver up the note, that the entry of credit thereon of $409.64 paid by Griffith, be declared void, and that the plaintiff, Watson, have judgment against the defendants Poague and Wood for that sum, with interest and costs. In affirming a judgment in favor of Watson for the amount claimed, the court said that the true ground of relief was, not that the entry of credit was made by mistake, but that Watson had lost the benefit of the payment for which the entry of credit was made on account of the subsequent proceedings in bankruptcy, "an event which, at the time of payment, was wholly contingent, and, therefore, beyond the knowledge of any human being;" that it was immaterial whether he did or did not know the provisions of the bankrupt act, or whether he did or did not know that Griffith was insolvent; that it was proper for him to receive the payment, but if he received it knowing that Griffith was insolvent, he received it subject to the rightful claim of an assignee in bankruptcy, if an adjudication in bankruptcy should take place upon petition filed within four months thereafter.

"It is true," continued the court, "that the receiving of the payment under such circumstances is called, in the bankrupt act, accepting a fraudulent preference, but

it was not an actual fraud, nor would it have been even a constructive fraud, if an adjudication in bankruptcy had not taken place upon a petition filed within four months.  Besides, whatever was done was not done with intent to wrong the defendants, but rather to protect them.  If plaintiff had declined to receive the payment, especially if Griffith was insolvent, the defendants might justly have complained.  There was at least a possibility that no adjudication in bankruptcy would take place upon a petition filed within four months.  But it did take place, and now the plaintiff asks relief, not against his own fraud, but because the payment which he properly received has been held, by reason of what afterwards transpired, and under the peculiar provisions of the bankrupt law, to have been made to him in trust, for all of the creditors of Griffith."

In *Pritchard* v. *Hitchcock,* it appeared that the plaintiff had lent to William Hitchcock a large sum of money, the payment of which was guaranteed by George Hitchcock.  Subsequently William paid the debt, but was at that time "in a state of complete insolvency."  Within a few days thereafter a "fiat in bankruptcy" issued against William, the assignees under which brought an action against Pritchard to recover the money so paid by the bankrupt, upon the ground that the payment was a fraudulent preference, in which action they succeeded.  Thereupon Pritchard brought his action against the guarantor, George Hitchcock.  It was held that the payment did not amount to a satisfaction.

In *Petty* v. *Cooke,* the facts were that Cooke for the accommodation of Steele executed with him a promissory note for £100, payable to Petty. Steele paid it in contemplation of insolvency, and Petty innocently accepted the amount. Afterwards Steele's trustee in bankruptcy recovered of Petty the amount which the latter had received from Steele. Petty then brought an action against Cooke, the accommodation maker, and he pleaded that the acceptance by the plaintiff of the payment which had been made by Steele discharged him, Cooke, from liability as a comaker or surety. The court of Queen's Bench held otherwise.

Blackburn, J., said: "Is there any case which says that an innocent act, unconsciously done, discharges the surety? . . The creditor accepts the money which he had no right to refuse, and the acceptance of which he had no means of knowing would injure the surety. He therefore did no act injurious to the surety, and the surety is not discharged." Lush, J., said: "I am of the same opinion. The rule of law and equity with regard to the rights of a surety is the same. I do not entertain the slightest doubt that the act of the creditor which discharges the surety must be an act involving something inequitable at the time it is done, and which interferes with the rights of a surety; an acceptance of money from the debtor, which the creditor thought at the time he accepted it was a good and valid payment, cannot, therefore, discharge the surety. The creditor, under the present circumstances, could not have refused to accept the

money; its acceptance was an advántage, not an injury, to the surety." Hanner, J., said: "I am also of the same opinion. Lord Eldon puts it that the surety is dis- charged when the creditor has done anything which is 'against the faith of his contract.' How can it be against the faith of his contract for the creditor to do that which it was his duty to do, namely, to receive payment? It turned out afterwards that the payment was not a good payment, and therefore the surety is not discharged."

Judge Sanborn, after citing the foregoing opinion, said in *Swarts* v. *Fourth National Bank,* supra, a case presenting a similar question:

"Those opinions are well grounded in reason, clear and persuasive. They lead to just and equitable re- sults, and they are exactly applicable to the facts of this case. The bank was guilty of no fraud or wrong when it accepted payment from the insolvent. The indorsers, as well as the bank, knew that any payments made upon the notes by the principal debtor were liable to be re- called as a condition of the allowance of the claim of the bank against its estate, if the maker of the note was ad- judged a bankrupt upon a petition filed within four months of the payments. Their contract was condi- tioned by this fact, and by the statute which called it into being. The acceptance of such payments was not forbidden by the moral or by the civil law. The bank did not know, and could not forsee, that the principal debtor on the note would become a bankrupt within four months from the payments. The holder of a surety's ob-

ligation may discharge it if he knowingly does any act to diminish his security or his opportunity to enforce it, or any act to increase his liability. But the acceptance of these payments did none of these things. A refusal to accept them might well have been held to be an act so likely to entail unnecessary loss upon the accommodation makers that it would discharge them. But the receipt of the money was an act of reasonable diligence—an act in the rational discharge of the duty of the bank towards the sureties. It hoped and believed that the money it received would be a payment upon the debt. If it returns it, no payment has been made by the receipt of it. The debt remains unpaid, because the money received turns out to be the property of the bankrupt estate, which the bank holds in trust for, and returns to, the estate under the law. The sureties are not discharged by the payment and satisfaction of any part of the notes, because no payment and satisfaction were effected. They are not discharged by any act or negligence of the creditor, because it has been guilty of none which either increased their liability or diminished their security or their opportunity to enforce it. The only just and equitable conclusion is that the accommodation makers, indorsers, or sureties upon the obligation of an insolvent debtor are not discharged from liability to pay them by the innocent acceptance by their creditor, of payments thereon from the insolvent debtor which the creditor is subsequently required to and does surrender to the latter's trustee in bankruptcy as a condition of the allow-

ance of its claim under section 57g of the bankrupt act." Act July 1, 1898, c. 541, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443].

The duty of the present complaint was, upon the adjudication in bankruptcy of Prewitt & Co., to surrender the preference and file its claim for allowance. 5 Cyc., 330, 331. It was compelled to restore the money, but failed to file its claim against the estate. The extent of the injury suffered by the indorsers through this failure is measured by the amount that would have been realized by the bank if it had filed the claim, and which was lost by not filing it. For this injury the bank must account in the abatement of its demand.

The record shows, without controversy, the amount of the debts filed in this proceeding, the assets, and the *pro rata* paid. To the debts should be added the $2,500 note, and the *pro rata* figured on that basis as of the date of the *pro rata* which was made in the bankruptcy proceeding. The *pro rata* amount thus ascertained for the $2,500 note will show the sum the bank would have received had it filed its claim. The amount so found must be deducted from the note.

It is conceded that on the basis above fixed, the *pro rata* amount applicable to the $2,500 note would have been $837. Deduct this amount, also the sum paid by Jones, the third indorser, and enter judgment for the bank for the balance and interest, against defendants Prewitt and Rushing.

It is insisted that the settlement should be made on

the basis of the bank's filing the whole of its demand against Prewitt & Co., that is the overdraft and the amount which had been received on the Rushing note. We cannot deal with that phase of the matter in the present case. The bank had no duty resting on it to any third party in respect of the overdraft. Nor can we deal with the $795 note; that matter is not before us. We have referred to it in a preceding part of the opinion, merely in an incidental way, in stating the history of the transaction.

Judgment as above directed.