**In re QUALITY TAKES TIME, INC., Debtor.**

**Samuel K. CROCKER, Trustee, Plaintiff,**

v.

**THIRD NATIONAL BANK IN NASHVILLE, Defendant/Third Party Plaintiff,**

v.

**Donna VRADENBURG, Third Party Defendant.**

**Bankruptcy No. 387–04092.
Adv. No. 388–0017.**

United States Bankruptcy Court, M.D. Tennessee.

Dec. 7, 1988.
Reconsideration Granted March 1, 1989.

Roy C. DeSha, Jr., Nashville, Tenn., for Quality Takes Time, Inc.

William Lamar Newport, Nashville, Tenn., for Donna Vradenburg.

David T. Axford, Nashville, Tenn., for Third Nat. Bank in Nashville.

## ORDER

GEORGE C. PAINE, II, Chief Judge.

Third party defendant Donna Vradenburg has made a motion for summary judgment on the third party claim. For the reasons stated, this motion for summary judgment is denied as to the legal theory presented by third party plaintiff Third National Bank and granted as to the equitable theory raised by Third National Bank.

Vradenburg was the president and sole shareholder of Quality Takes Time ("QTT") prior to it being placed into involuntary bankruptcy on July 31, 1987. Vradenburg had given Third National Bank a guaranty for the debts of QTT. Most of those debts were paid by Vradenburg out of her personal assets. However, on May 18, 1987 $23,000 of the debt was paid by QTT to

Third National Bank. That $23,000 is the subject of the underlying preference action.

After Third National Bank had received all of the payments for the obligation owed to it by QTT, it returned additional personal assets to Vradenburg that Vradenburg had given Third National Bank to secure the loans. After the involuntary petition was filed and before the order for relief was issued, Vradenburg asked for the return of the guaranty. On August 20, 1988 Third National Bank returned the guaranty to Vradenburg with a letter signed by Kathy Rolfe, assistant vice president in which Ms. Rolfe said, "I believe this now completely closes are collateral account."

The guaranty document states that the guarantor will provide an unconditional and continuing guaranty of all debts of the borrower QTT. The guaranty also indicates that the guaranty will only be released in writing by the bank.

Vradenburg argues that the guaranty was released or abandoned by the letter signed by Ms. Rolfe. Therefore the bank can no longer rely on the guaranty as a basis for recovery from Vradenburg.

Third National argues that if the $23,000 payment is determined to be a preference that may be avoided by the trustee then the guarantor should still be liable on the guaranty. Third National cites as authority for this proposition *Second National Bank v. Prewett*, 117 Tenn. 1, 96 S.W. 334 (1906). In that case the bank had accepted a payment from an insolvent debtor which was recovered as a preference in bankruptcy. The bank then sought to recover from the accommodation maker on the note.

The court held that the bank could recover from the accommodation maker because it accepted the payment in good faith and was legally obligated to accept the payment or lose its right to claim against the accommodation maker. The court said that this ruling should apply to accommodation makers, indorsers, and sureties. *Prewett*, 117 Tenn. at 10, 96 S.W. at 336.

Defendant Vradenburg admits that she had given a guaranty for QTT's debts and that the guaranty was still in effect

when Third National accepted the payment at issue in the principal action. In accordance with *Prewett* she will be liable on the guaranty should the Trustee recover the payment from Third National if (1) Third National accepted the payment in good faith, and (2) Third National would have lost the guaranty if it failed to accept the payment. These two questions are material issues of fact which remain unanswered. Thus, the motion for summary judgment is denied as to this theory.

 Third National also asserts an equitable theory which would require Vradenburg to be liable for the possible preferential transfer. First, Vradenburg was liable to Third National Bank for the obligations of the debtor QTT and as such was a creditor of QTT. She was also the sole shareholder and president of the debtor and as such was an insider of the debtor within the meaning of 11 U.S.C. § 101. She, the insider, decided to use QTT funds to pay the debt which she had guaranteed. She used the funds available to pay the debts that she had guaranteed thereby using the funds to benefit herself. Because she benefited from the transfer, she was under 11 U.S.C. § 550 a mediate transferee of the preferential transfer.

According to Third National Bank, equity may require that she be the one to return the preferential transfer since she was an insider, she controlled the decisions which created the preferential transfer, and she directly benefited from the transfer.

Third National's equitable argument has only been accepted in those circumstances where the payment was made more than 90 days but within one year of the filing of bankruptcy. *See Seeley v. Church Building and Interiors, Inc. (In re Church Building and Interiors, Inc.),* 14 B.R. 128 (Bankr.W.D.Okla.1981); 4 *Collier on Bankruptcy,* para. 550.02 (15th ed. 1988). Courts have limited liability to insider guarantors in such circumstances because such remote payments to lenders are preferences only because they benefit insider guarantors.

In this case the payment was within 90 days of the filing and could thus be a preference regardless of the guaranty. Without deciding whether this court would adopt this theory under different circumstances, the court finds that the theory does not apply to this case.

The motion for summary judgment is granted as to Third National's equitable theory.

IT IS, THEREFORE, SO ORDERED.