CRETEAU v. FOOTE & THORNE GLASS CO. et al.

(Supreme Court, Appellate Division, Second Department. May 10, 1899.)

1. NOTES—PRESENTMENT.

Where a series of negotiable notes are made payable at different times under an agreement making those maturing later due immediately on default in payment of the one first due, the holders of the former have a reasonable time to present them for payment after dishonor of the latter.

within Laws 1897, c. 612, § 131, requiring presentment of a note not pay-- able on demand on the day it falls due.

**2. FOREIGN CORPORATIONS—BUSINESS IN THE STATE—EVIDENCE.**

The fact that a nonresident corporation received a note in compromise of its claim against a resident corporation does not show that it had been doing business in the state within Laws 1892, c. 687, § 15, prohibiting a foreign corporation from doing business without a certificate from the secretary of state authorizing it to do business.

**3. NOTES—ASSIGNMENT TO ATTORNEY—CHAMPERTY—EVIDENCE.**

The fact that an assignee of a note was an attorney is insufficient to show that it was assigned for the purpose of bringing suit, as prohibited by Code Civ. Proc. § 73.

Appeal from trial term, Kings county.

Action by Frederic A. Creteau against the Foote & Thorne Glass Company and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

J. K. Long, for appellants.
Herbert Noble, for respondent.

WILLARD BARTLETT, J. The plaintiff sues, as the assignee of the More Jonas Glass Company, upon four promissory notes of the Foote & Thorne Glass Company, received under a compromise agreement with the creditors of the last-named corporation. By this agreement it was provided that each creditor should accept in payment of his claim four promissory notes of the Foote & Thorne Glass Company, payable 3, 6, 9, and 12 months after date, each note representing 25 per cent. of the amount due to the creditor, and each note to be indorsed by the defendants Thomas W. Hislop and John D. Colby, who were, respectively, the president and vice president of the Foote & Thorne Glass Company, and the largest stockholders therein. The compromise agreement concluded with these words:

"This agreement is made by us, and each of us, upon the understanding that, if default be made in the payment of any of the notes constituting a particular series as above provided, all notes of subsequent series held by us, and all portion of our several claims then unpaid, shall be due and payable immediately, and the making of this agreement shall in no way prejudice our right to the immediate enforcement of our said claims."

Four notes were made, indorsed, and delivered to the Foote & Thorne Glass Company, in accordance with this agreement, all payable at the East River National Bank in the city of New York. The first fell due on March 17, 1898, but was not paid. It was protested for nonpayment, and seasonable and proper notice of the nonpayment and protest was given to the indorsers. The More Jonas Glass Company was a New Jersey corporation, having its principal place of business at Bridgeton, in that state. The secretary, who was in that place, did not learn of the dishonor of the first note until March 19, 1898, which was a Saturday. He could not get to New York on that day before business hours closed, but on the Monday following (March 21, 1898) he brought the other three notes to New York, and on that day they were presented at the East River National Bank for payment, and, not being paid, were protested for nonpayment.

The appellants contend that, inasmuch as, under the compromise agreement, all the subsequent notes became due and payable immediately upon the dishonor of the first note, they therefore became due on March 17, 1898, when payment of the first note was refused, and that, inasmuch as the subsequent notes were not presented upon that day, the payee or its assignee has lost the right to recover upon them.  Section 131 of the negotiable instruments law provides that, where the instrument is not payable on demand, presentment must be made on the day it falls due.  Laws 1897, c. 612.  The appellants invoke this re-enactment of the previously existing law on this subject as controlling in the present case, inasmuch as the notes in question here were payable, not on demand, but a specified number of months after the date of each.  The learned trial judge disposed of the case in favor of the plaintiff upon the theory that notice to the indorsers of the dishonor of the first note was notice to them of the dishonor of all the rest.  While I do not say that this view is not correct, there is force in the objection that, when the first note was protested, none of the others had been presented, and the nonpayment of the first raised no legal presumption that the others might not be paid upon presentation.  It is plain, however, that these promissory notes are not to be treated as they would be in the absence of the compromise agreement.  That agreement practically provided for the modification of the terms of all the notes except the first one, by changing the time for payment if the first should be dishonored.  Hence we must consider the compromise agreement and the notes as constituting parts of one and the same transaction, embodying the contract between the parties; and I think that there is no difficulty in construing this contract so as to sustain the judgment of the special term.  It seems to me that the contract must be construed in one of two ways:  (1) It may be regarded (substantially in accordance with the construction adopted by Mr. Justice Gaynor) as an agreement that the dishonor and notice of dishonor of the first note was to have the same effect upon the maker and indorsers as the dishonor and notice of dishonor of all the notes, if duly and seasonably presented for payment, would have had; or (2) it may be deemed an agreement that, after the dishonor and notice of dishonor of the first note, the payee was to have a reasonable time to present the other notes for payment, and that, if they were then dishonored, notice of nonpayment, if promptly given, should suffice to hold the indorsers.  In either view, the defendants are liable.  In favor of the latter view, it may be observed that the makers had the whole of March 17, 1898, within which to make payment, so that it would be unreasonable to construe the contract as requiring the payee to present the other notes for payment on that day.  Again, the provision in the compromise agreement that the other notes should become due and payable immediately upon the nonpayment of the first note, was obviously intended for the benefit of the creditors, and should not be so interpreted as to deprive them of all benefit whatever, as would be the case if the construction contended for by the appellants were to be adopted.

It is insisted that the plaintiff cannot maintain this action against

the defendants, or any of them, because the More Jonas Glass Company, his assignor, is a foreign corporation, having no certificate from the secretary of state authorizing it to do business in New York. "No foreign stock corporation," says the statute, "doing business in this state without such certificate shall maintain any action in this state upon any contract made by it in this state until it shall have procured such certificate." Laws 1892, c. 687, § 15. The answer to this is that the More Jonas Glass Company does not appear to have been doing business in this state within the meaning of the statutory prohibition relied upon. The notes and compromise agreement were originally assigned by the More Jonas Glass Company to an attorney at law, who brought suit upon the notes against the appellants, which he subsequently discontinued. He then transferred the notes and agreement back to the corporation, which subsequently assigned them to the plaintiff. The transfer to the attorney is attacked in behalf of the appellants on the ground that it was forbidden by section 73 of the Code of Civil Procedure, prohibiting an attorney or counselor from buying any promissory note or other chose in action with the intent and the purpose of bringing a suit thereon. The mere assignment, however, of a thing in action to a person who happens to be an attorney does not of itself suffice to establish the fact that it was made with the intent and for the purpose of bringing suit. Furthermore, it is difficult to see how the assignment to the attorney could possibly affect the rights of the plaintiff, as the notes and agreement were reassigned to the More Jonas Glass Company by the attorney, and the plaintiff derives his title directly from the corporation. I think the judgment should be affirmed.

Judgment affirmed, with costs. All concur.