## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

### FIRST NATIONAL BANK OF LOUISA V. ANDERSON.

June 12, 1919.

Absent, Sims, J.

BILLS, NOTES AND CHECKS—*Notice of Protest—Waiver.*—The correspondse of an indorser's attorney with the payee of a note and the correspondence of a fellow indorser, with the knowledge of the first indorser, with the payee, showed that the first indorser not only admitted his liability as an indorser to pay the note, but authorized and suggested a plan of settlement by curtail and renewal.

*Held:* That the indorser's conduct was tantamount to an implied waiver of formal notice of dishonor under section 2841-a, subsection 109, Code of 1904.

Error to a judgment of the Law and Equity Court of city of Richmond, in a proceeding by motion for a judgment for money. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*W. Worth Smith, Jr., T. J. Moore* and *M. J. Fulton,* for the plaintiff in error.

*H. W. Goodwyn,* for the defendant in error.

WHITTLE, P., delivered the opinion of the court.

On July 24, 1917, the Southern Exploration Company, Incorporated (which we shall designate as the company), made its note to the First National Bank of Louisa (hereinafter called the Bank), at ninety days, for $1,500; and

on September 3, 1917, the company made another note to the bank at thirty days, for $850. Both of these notes were endorsed by several of the directors, including J. W. Moore and J. T. Anderson, and were discounted by the bank. Neither of the notes was paid at maturity, and both were protested for nonpayment, but notice of protest was not mailed to the endorsers. The notes remaining unpaid, the bank proceeded by motion for judgment on each against the maker and endorsers in the Law and Equity Court of the city of Richmond. The company made no defense, and this record only concerns the note for $850 and the liability of the defendant in error, J. T. Anderson, as an endorser, who demurred to the evidence.

The single question submitted for determination was, and is, whether the defendant waived notice of protest. The trial court resolved that issue in favor of the defendant and entered the judgment under review sustaining his demurrer to the evidence.

From the standpoint of a demurrer to the evidence, it appears that at the date of these notes the company was without capital and has been wholly insolvent hitherto; that the management, including the endorsers, were cognizant of that condition, and that the loan was made to the company on the faith of the financial ability of J. W. Moore and J. T. Anderson as endorsers, to whom the bank looked for payment; that J. W. Moore, in circumstances identical with those in the case of his joint endorser, Anderson, admits liability on the notes and is not defending the motion; that on October 12, 1917, the bank's attorney addressed a letter to Moore and Anderson, endorsers, demanding payment by them of the notes; that on November 3rd, Anderson's attorney, in reply to that letter, stated that it had been referred to him "some time back," and that he had been trying to get in communication with two other endorsers to ascertain what they were going to do about it;

and added, "My clients (referring to Moore and Anderson) say that so far as they are concerned they are perfectly willing to do what is right and proper." T. Justin Moore, a member of the Richmond bar, on behalf of these two endorsers, also replied to the letter of the bank's attorney, giving positive assurance that they recognized their liability and would see that the note was paid. The letter concluded, "I trust, therefore, you will give them an opportunity to make some arrangement for the settlement of the note, which can be done, I am satisfied, during the latter part of this week. The endorsers on the note are highly responsible financially, and I can see that no harm can come to your client by waiting a few days." Mr. T. Justin Moore again wrote the bank's attorney on October 26, in reply to a subsequent letter: "I have brought your letter of the 22nd to the attention of the parties interested in the same and beg to advise that the directors of the company expect to have a meeting on October 29th, when they expect to make some plans and arrangements about the two notes which are due the bank of Louisa." On December 4th, J. W. Moore, at the instance of Anderson, wrote the bank: "At a meeting of the endorsers of notes held by your bank, I was requested to write you and ask if a settlement could be made by a curtail and renewal of the same. Mr. Eden has left the State, and I do not think Dr. Connell is in a position to pay anything at this time, so you see it would be quite a sum for Mr. Anderson and myself to have to raise on short notice. I know your duty to your stockholders is to safeguard their interest, and I feel quite sure that, with Mr. Anderson and myself, they will not lose a dollar. * * * I have endorsed this paper and shall make no effort to dodge the responsibility, but will appreciate a little time being given us." This letter was written at the specific request of the defendant, Anderson, and is as binding on him as if he had personally made request for the

curtail and renewal of the notes. Indeed, the *gravamen* of the correspondence, taken as a whole, shows that Anderson not only admitted his liability as an endorser to pay the notes, but authorized and suggested the plan of settlement. Certainly, upon a demurrer to the evidence, the jury would have been warranted in so finding, and that his conduct was tantamount to an implied waiver of formal notice of dishonor.

The doctrine of waiver of notice of dishonor is crystalized in the Negotiable Instruments Law, Virginia Code, section 2841-a, subsection 109, as follows: *"Waiver of Notice.* Notice of dishonor may be waived either before the time of giving notice has arrived, or after the omission to give due notice, and the waiver may be express or implied." The statute affirms and confirms the antecedent rule on the subject established by the authorities, and renders the citation of reported cases superfluous.

Upon these considerations, we feel constrained to reverse the judgment of the trial court, and to enter such judgment as that court ought to have entered, overruling the demurrer to the evidence and rendering judgment thereon for the plaintiff in error.

*Reversed.*