17304. SOUTHERN PACIFIC COMPANY *v.* DiCRISTINA
*et al.*

1. The present writ of error is one of which this court, and not the Supreme Court, has jurisdiction.
2. Objections which go to the judgment only and do not extend to the verdict cannot properly be made grounds of a motion for a new trial. The same is true of exceptions to a judgment overruling a motion to strike or dismiss the suit, in the nature of a motion for a nonsuit.
3. There being no conflict in the testimony and nothing to discredit any witness testifying, and the evidence introduced, with all reasonable deductions or inferences therefrom, having demanded a finding of liability as for damage to the goods in transit as a result of the defendant's negligence, any errors which the court may have committed in charging the jury upon any subject not relating to the *amount* of the damage were harmless to the defendant. There was no reversible error in any

Carriers, 10 C. J. p. 333, n. 78; p. 334, n. 86; p. 371, n. 52; p. 389, n. 97; p. 517, n. 54.

Trial, 38 Cyc. p. 1516, n. 55; p. 1534, n. 34; p. 1536, n. 36; p. 1565, n. 84.

28

of the court's rulings or charges, nor in the final judgment refusing a new trial.

DECIDED FEBRUARY 14, 1927.

Attachment; from Chatham superior court—Judge Meldrim. February 20, 1926.

*Lawton & Cunningham,* for plaintiff in error.

*Joseph H. Ross,* contra.

BELL, J. The plaintiffs in this case, H. E. & R. DiCristina, were consignees of a carload of lettuce, delivered to Southern Pacific Company, at Los Angeles, California, on May 16, 1921, to be transported to the plaintiffs in Atlanta, Georgia. The bill of lading was duly signed by the shipper and was indorsed, "Reiced [preiced?] car. Reice at all regular icing stations to destination," and routed the shipment over the lines of the Southern Pacific Company, the Louisville & Nashville Railroad Company, and the Atlanta & West Point Railroad Company. It acknowledged receipt of the goods as being "in apparent good order," and contained, among others, the stipulation that "except where the loss, damage, or injury complained of is due to delay or damage while being loaded or unloaded, or damage in transit by carelessness or negligence as a condition precedent to liability, claims must be made in writing to the originating or delivering carrier within six months after delivery of the property." The shipment, for some reason not shown, was given a different routing from that prescribed in the bill of lading, and on May 26 was found by consignees in the possession of the Nashville, Chattanooga & St. Louis Company in Chattanooga, Tennessee, when they ordered it diverted to W. C. Crenshaw & Company of Richmond, Virginia. The goods arrived in Richmond on May 31 in a damaged condition. They were disposed of at a loss, and the plaintiffs brought this suit against the Southern Pacific Company, initial carrier, to recover for the loss sustained. The suit was instituted by the process of attachment, under which there was seized in this State a freight-car belonging to the defendant, which it replevied. The defendant moved to dismiss the attachment, and the judgment overruling this motion was affirmed in *Southern Pacific Co.* v. *DiCristina,* 33 *Ga. App.* 439 (127 S. E. 151).

The defendant's answer to the declaration in attachment, like its bond to replevy the property, contained a protestation against the court's jurisdiction. The trial resulted in a verdict in favor

of the plaintiffs, and the case is here upon exceptions to a judgment refusing the defendant's motion for a new trial.

1.   It is only through the medium of its motion for a new trial and of the exception to the judgment overruling it that the defendant has sought to present any question for decision at this time. Special grounds 4, 5, and 6 assign error upon the judgment for various reasons, namely, because the court was without jurisdiction to render it; because a general judgment against the defendant, rendered upon the theory of jurisdiction acquired by the act of the defendant in replevying the property, which it had replevied under protest for use in interstate commerce, amounts to "a denial of due process of law and of equal protection of the law, in violation of the constitution of the United States, in that it requires this defendant to submit its person to the jurisdiction of the court or to lose its property"; and because such judgment constitutes an unwarranted and unlawful interference with interstate commerce, "in violation of the commerce clause of the constitution of the United States, in that it requires this defendant, which is a nonresident common carrier engaged in interstate commerce, to either submit its person to the jurisdiction of the court or to lose its property in interstate commerce." Special ground 11 complained that the court erred in failing to sustain the defendant's motion to dismiss the attachment and declaration in attachment, which motion was in the nature of a motion for nonsuit, based on evidence which the defendant claimed disclosed that the seizure of the freight car was an unwarranted interference with interstate commerce, "in violation of the commerce clause of the constitution of the United States."

Upon the oral argument in this court a question arose as to whether the case involved an attack upon the constitutionality of a Federal statute, and counsel were requested to file supplemental briefs upon the question whether this court or the Supreme Court had jurisdiction of the writ of error. Upon examination of the record, we are clear that the case is one falling within the jurisdiction of this court. "Under the constitutional amendment of 1916, defining the jurisdiction of the Supreme Court and the Court of Appeals of this State, the Court of Appeals has jurisdiction to decide questions of law that involve application, in a general sense, of unquestioned and unambiguous provisions of the constitution to

a given state of facts, and that do not involve construction of some constitutional provision directly in question and doubtful either under its own terms or under the decisions of the Supreme Court of the United States, and that do not involve the constitutionality of any law of the State or of the United States or of any treaty." *Gulf Paving Co.* v. *Atlanta,* 149 *Ga.* 114 (99 S. E. 374) ; *Daniel* v. *Claxton,* 35 *Ga. App.* 107 (132 S. E. 411). The attack in this case is against the constitutionality of a *judgment* or of a suit, and not of a statute. Furthermore, there is not, within the rules of practice obtaining in this State upon the subject, any sufficient designation of the particular provision of the constitution alleged to have been violated. See, in this connection, *Griggs* v. *State,* 130 *Ga.* 16 (60 S. E. 103) ; *Dobbs* v. *Bullard,* 149 *Ga.* 553 (101 S. E. 122) ; *Johnston* v. *Brenau College,* 146 *Ga.* 182 (5) (91 S. E. 85) ; *Anderson* v. *State,* 2 *Ga. App.* 1 (58 S. E. 401).

2. Having concluded that the special grounds of the motion for a new trial referred to in the preceding division raise no question that this court is without jurisdiction to decide, we will now say that they present no question for decision. If a judgment or decree is erroneous or illegal, it should be excepted to directly. Objections which go to the judgment only and which do not extend to the verdict can not properly be made grounds of the motion for new trial. *Collins* v. *Carr,* 118 *Ga.* 205 (4) (44 S. E. 1000) ; *Phillips* v. *Paul,* 148 *Ga.* 104 (2) (95 S. E. 969) ; *Adams* v. *Carnes,* 111 *Ga.* 505 (4) (36 S. E. 597) ; *Bullock* v. *Dunbar,* 114 *Ga.* 754 (7) 40 S. E. 783). The same is true of exceptions to the overruling of a motion to strike or dismiss the suit in the nature of a motion for a nonsuit. *Farmers Union Warehouse Co.* v. *Stewart,* 138 *Ga.* 733 (75 S. E. 1131). See cases cited in 8 Michie's Enc. Dig. Cum. Supp. 856-859.

3. Other grounds of the motion for a new trial assign error upon certain excerpts from the charge of the court, one of which was an instruction to the effect that if the shipment was handled by a railroad not specified in the routing, then the defendant railroad company would not have the right to rely upon the provisions of the bill of lading as to the filing of the claim within six months, the exception thereto being that a mere misrouting would not amount to an abandonment of the bill of lading or to a waiver of its terms. This point seems to have been theoretically well taken,

in view of Ga. Fla. & Ala. R. Co. *v.* Blish Milling Co., 241 U. S. 190 (36 Sup. Ct. 541, 60 L. ed. 948); Barrett *v.* Van Pelt, 268 U. S. 85 (45 Sup. Ct. 437, 69 L. ed. 857); Davis *v.* Roper Co., 269 U. S. 158 (46 Sup. Ct. 28, L. ed. 209). If error was committed as alleged, however, it was immaterial in the present case, in the view that we take of the evidence on the subject of negligence. Under the act of March 4, 1915, amending the interstate-commerce act of February 4, 1887, as amended by section 7 of the act of June 29, 1906, it is unnecessary that the plaintiff shall file a claim within the time named in the bill of lading, if the loss or damage complained of was due to delay or damage while being loaded or unloaded, or damage in transit by carelessness or negligence. It would seem that an error such as here alleged would be harmless in any case which was actually submitted and tried on the theory of the defendant's negligence and in which the jury were required by the court to return a verdict in favor of the carrier if they found it was not negligent. We will not say that the present case proceeded exclusively upon that issue. We shall endeavor to show presently, however, that the evidence demanded the inference that the loss was due to the company's negligence with respect thereto while the goods were in transit, and if this is true, it will still follow that the charge of the court above referred to could not have prejudiced the defendant, for in that case none of the errors which the court may have committed in charging the jury could be material.

One excerpt from the charge of the court, submitting to the jury the question of negligence, was excepted to upon the ground that there was no evidence that the failure of the defendant and its connecting carriers to properly ice the shipment, if there was such a failure, was due to negligence, or that the delay in transportation, if there was a delay, was due to negligence, and upon the further ground that the instruction told the jury, in effect, that "proof of damage to delay or to improper refrigeration would authorize them to conclude, without more, that the delay or improper refrigeration was due to negligence; in other words that the proof of damages raised a presumption of negligence." Among the other exceptions was one to an instruction on the subject of burden of proof, which was assigned as error upon the ground that it improperly placed the burden upon the defendant to show that

it iced the lettuce at its regular icing stations as required by the bill of lading, whereas the burden was on the plaintiff to show a noncompliance with this requirement. None of the exceptions seem quite to raise the question which has been argued at length in the briefs, as to whether the court erred in charging the jury that if there is a delivery of goods to a common carrier in good condition and delivery at destination in bad condition, there arises a rebuttable presumption that the carrier was negligent. See, in this connection, Chesapeake &c. R. Co. v. Thompson Co., 270 U. S. 416 (46 Sup. Ct. 318, 70 L. ed. 659). In charging the jury upon the burden of proof in a suit of this sort against a carrier for damage to an interstate shipment of goods, where the plaintiff seeks to show negligence in order to bring himself within the final proviso of the Cummins amendment, it might perhaps be inaccurate to speak of a presumption, even a rebuttable presumption, although in the Thompson case just cited the Supreme Court of the United States said, "There is no language in the statute from which a purpose may be inferred to vary or limit the common-law rules governing proof of negligence as a fact in issue, and the shipper may follow these rules when he seeks to show that no notice of claim was necessary." While, as we have already stated, we think it unnecessary to decide whether there were errors in the charge of the court, the attention which we have given to the several assignments of error to which we have just referred has led us to consider certain legal principles which are pertinent in determining whether the evidence demanded the finding that the defendant was negligent. In the Thompson case, supra, it was further said: "The respondent therefore had the burden of proving the carrier's negligence as one of the facts essential to recovery. When he introduced evidence to show delivery of the shipment to the carrier in good condition and its delivery to the consignee in bad condition, the petitioner became subject to the rule applicable to all bailees, that such evidence makes out a prima facie case of negligence. [Citing authorities.] But even if this prima facie case be regarded as sufficient in the absence of rebutting evidence to entitle the plaintiff to a verdict, . . . the trial court erred here in deciding the issue of negligence in favor of the plaintiff as a matter of law. For the petitioner introduced evidence of the condition of the cars from the time of shipment to the time of arrival, which persua-

sively intended to exclude the possibility of negligence." In the present case the evidence showed, without dispute, that the lettuce was delivered to the carrier in good condition and was delivered to the consignee in bad condition. This made a prima facie case of negligence. The Supreme Court in the Thompson case left it undecided whether, in this situation, the plaintiff would be entitled to a verdict, as a matter of law, in the absence of rebutting evidence. In that case the carrier introduced evidence tending to exclude the possibility of negligence. In the present case the carrier was silent. Moreover, the plaintiffs did not content themselves merely with evidence as to the condition of the goods respectively at delivery to the carrier and at delivery to the consignee. Several witnesses, who appeared to have been competent to give opinions upon the subject, testified that if the carrier had properly iced the car at "regular icing stations," or if the car had been properly equipped and properly refrigerated, the shipment would have arrived at destination in good order. C. M. Otoy testified that he personally superintended loading the lettuce in Los Angeles, and that it was then fresh, green, and firm and in first class merchantable condition, trimmed, and packed in ice, and that if the shipment reached Richmond "spotted and with some decay, and rotted as soon as the ice got from it," as appeared from the testimony of another witness, "it must have been due to the refrigeration, that is, that it was not properly iced, as it left here in good condition. It must have been heated somewhere in transit." H. E. DiCristina, one of the plaintiffs, testified: "This car would have arrived in good condition, if in good order at the time of shipment and properly refrigerated or iced. The same would be true if the bill of lading provided for reicing at all regular icing stations." There was other evidence to the same effect. In the light of all the evidence, we think there was no reasonable supposition to be indulged by the jury save that of the defendant's negligence. Upon what basis could the jury have reasoned to any other conclusion, in the absence of testimony, circumstantial or otherwise, tending to exclude the possibility of the defendant's negligence? While it is true that where reasonable men might differ as to inferences to be drawn from certain evidence, the matter is one for solution by the jury, yet where, under all the circumstances, only one conclusion is reasonably possible, the question

ceases to be issuable as one of fact and becomes a question of law. *Dixon* v. *Bristol Savings Bank,* 102 *Ga.* 461 (2) (31 S. E. 96, 66 Am. St. R. 193); Civil Code (1910), § 5926. The rule that in a case of this sort the burden is upon the plaintiff throughout the entire trial (Bland *v.* Chicago R. Co., 232 S. W. 232, and cases cited) does not mean that the plaintiff may never be entitled to a verdict as a matter of law. There was no conflict in the testimony and nothing to discredit any witness. Under the evidence the court, in our opinion, would have been authorized to direct a verdict in favor of the plaintiff on the issue of negligence, leaving only for their determination the amount of the damage. See, in this connection, Buswell *v.* Fuller, 89 Me. 600 (36 Atl. 1059); Cogdell *v.* Wilmington &c. R. Co., 132 N. C. 852 (44 S. E. 618); Russell *v.* Oregon R. Co., 155 Fed. 22 (83 C. C. A. 618); 5 Wigmore on Evidence, 2494, 2495 (2b); 2 Wharton on Evidence, 2d ed., § 371; Galveston &c. R. Co. *v.* Wallace, 223 U. S. 481 (32 Sup. Ct. 205, 56 L. ed. 516); *Hyer* v. *Holmes,* 12 *Ga. App.* 837 (79 S. E. 58).

It is true that one or more witnesses testified to the effect that this damage could have been caused by "the lettuce being diseased when shipped." But this was expressed in each instance not as a probability, but merely as a possibility or conjecture, and there was no such testimony from any witness who knew of the condition of the lettuce when it was delivered to the carrier in Los Angeles. Evidence of this character should not alter the conclusion that the inference of the defendant's negligence was demanded from all the evidence. The initial carrier was liable for damage by negligence of connecting carriers. Ga., Fla. & Ala. R. Co. *v.* Blish Milling Co., supra.

There was some issue in the trial as to whether there was delay and as to the effect of the delay, if any, upon the shipment. But we think it is unnecessary to bring any question of delay into this decision, nor have we considered what might possibly be the result of the deviation from the route prescribed in the bill of lading. See, in this connection, 4 R. C. L. 812, § 268 et seq.

There was evidence sufficient to establish the value of the lettuce on its arrival at destination. The court did not err in the admission of testimony upon that subject nor in charging the jury thereon. It follows, from what we have said, that no reversible

error was committed, and that the court below ruled correctly in refusing a new trial.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*