18648.   BIGGERS *v.* BANK OF RINGGOLD.

DECIDED AUGUST 31, 1928.

*McClure & McClure, T. G. Head,* for plaintiff in error.
*James H. Anderson,* contra.

BELL, J.   Bank of Ringgold brought suit by attachment, on the ground of nonresidence, against W. E. Biggers, as drawer, upon two drafts aggregating $8,296.44 and drawn upon Georgia Cotton Growers Co-operative Association of Atlanta, Georgia, payable at sight to the order of Bank of Ringgold.  There was attached to the drafts at their execution a bill of lading covering 139 bales of cotton,

in payment for which it was expected that the cotton growers association would honor the drafts, and thus reimburse the plaintiff for the amount it had advanced to the defendant thereon. The association, however, declined acceptance of the cotton and refused to pay the drafts. After some delay the cotton was sold and the proceeds, less certain items of expense, were credited upon the drafts, and the suit was to recover the alleged balance in the amount of $2,161.31.

The trial resulted in a verdict in favor of the plaintiff, and, the defendant's motion for a new trial being refused, he excepted. Two grounds of the motion for a new trial assign error upon the overruling of a motion to dismiss the attachment. Exceptions to this ruling were also taken pendente lite, but there was in the final bill of exceptions no assignment of error either upon the exceptions pendente lite or upon the rulings therein excepted to.

The defendant traversed the ground of the attachment alleging that he was a nonresident of the State of Georgia, and upon the trial of the issue thus formed the court directed a verdict in favor of the plaintiff. This ruling is made one of the grounds of the motion for new trial.

There was an issue in the evidence as to whether plaintiff had given to the defendant notice of the dishonor of the drafts within the contemplation of the uniform negotiable instruments act of August 18, 1924 (Ga. L. 1924, p. 126, sections 89, 103, 104, 114). The court nevertheless instructed the jury to return a verdict in favor of the plaintiff for the amount sued for, except a sum representing certain items of expense which the plaintiff had deducted as above stated, and as to its authority to deduct which there was a material conflict in the testimony.

■ It is unnecessary to set forth the grounds of the motion to dismiss the attachment. To have raised the question of whether the court erred in overruling this motion, the ruling should have been excepted to directly. Rulings upon pleadings can not properly be made grounds of a motion for a new trial. *Southern Pacific Co.* v. *DeCristina,* 36 *Ga. App.* 433 (2) (137 S. E. 79), and cit. While it appears that exceptions pendente lite were taken, there is in the final bill of exceptions no assignment of error either upon the exceptions pendente lite or upon the rulings therein excepted to. *House* v. *American Discount Co.,* 31 *Ga. App.* 396 (120 S. E. 701).

■ The court properly directed a verdict in favor of the plaintiff and against the defendant upon the issue formed by the defendant's traverse of the ground of the attachment alleging that the defendant was a nonresident of this State. While it was admitted by the plaintiff that the defendant had retained his legal citizenship in the State of Georgia, being a registered voter of Catoosa county and having the right to vote in that county in elections held in this State, it is conclusive, from the evidence of the defendant himself, that he was a nonresident of the State of Georgia within the meaning of the attachment laws. He testified that while he owned a farm and other property in Catoosa county, he had no dwelling place in that county; that for several years he had been in business in the City of Chattanooga, Tennessee, and had owned and occupied a residence there at the same location for at least three and one half years. He removed from Ringgold, Georgia, first to Union Avenue in Chattanooga, where he lived for about six months. He later removed to 1411 Bailey Avenue in the latter city, where he was still living at the date of the trial. His name was listed in the Chattanooga telephone directory as having both a residence and a business telephone. His daughter attended the public schools of that city. The defendant further testified that he intended to keep his citizenship in Georgia, but there is nothing to indicate that he expects ever to return to this State to live. Physically he seems to be permanently located in Chattanooga. Under the facts as thus disclosed, the defendant was a nonresident of the State of Georgia for the purposes of attachment.

As to ordinary suits, section 5563 of the Civil Code of 1910 provides that leaving a copy at the defendant's residence shall be sufficient service. The defendant here could not have been so served. In a case of this sort the question is not one of domicile merely, but is one of actual residence. Residence has been defined to be an act, and where a person voluntarily removes from this State for the purpose of living and carrying on business elsewhere for an unlimited period, he is, for the purposes of attachment, a nonresident of Georgia, nothwithstanding he may occasionally visit this State and may intend to return at some indefinite time in the future.

The facts as disclosed by the record demanded a finding that the defendant was a nonresident of the State of Georgia, and there was no error in directing the jury to return a verdict accordingly.

*Stickney* v. *Chapman,* 115 *Ga.* 759 (42 S. E. 68). This case is distinguishable from the case of *Flemister Grocery Co.* v. *Wright Mercantile & Lumber Co.,* 10 *Ga. App.* 702 (73 S. E. 1077).

■ The defendant contends that the court erred in not submitting the case to the jury upon the question of whether he was discharged by the failure of the bank to notify him, within the terms of the negotiable instruments law, of the dishonor of the drafts by the drawee, the cotton growers association. There was testimony for the bank showing that notice was given in strict accordance with the statute. This, however, was denied in the testimony of the defendant, so that in the absence of a waiver of notice by him, there was an issue for the jury as to the fact of notice.

It is clear that the parties did not contemplate that the bank was buying the cotton. The defendant thought he was selling it to the cotton growers association and drew upon the association for the purchase price, attaching bill of lading for the shipment. The association declined the shipment and refused payment of the drafts. This was about the middle of February, 1926. After some negotiation and controversy the defendant wrote and delivered to the plaintiff the following letter:

"Ringgold, Ga., June 1, 1926.
"Bank of Ringgold, Ringgold, Ga.

"Gentlemen: You are hereby authorized to sell the 139 bales of cotton stored in Atlanta, Ga., at 10-1/8 cents per pound f. o. b. loaded on cars Atlanta, Ga., for my account and credit drafts due said bank. [Signed] W. E. Biggers."

The cotton was sold by the bank in accordance with this authority, and the proceeds, less certain items of expense, were credited upon the drafts.

The defendant testified: "I arranged the sale of this cotton myself; that is, I had an offer from James and Milner. I had a very good offer, it was in the summer time and a large crop was planted, and the crop looked good, and it looked like it was going lower, and I knew the uncertainty of lawsuits, and I thought the best thing to do was to get out from under that cotton, and I wrote Mr. Merritt [cashier of the bank] and told him about this offer on the cotton and to sell the cotton. That is the letter introduced in evidence. The cotton was sold to my customer and the money applied to the drafts, or a part of it. I think they applied

a part of it on lawyers' fees and interest. . . I don't know that it is true that there was considerable effort made to sell that cotton by me and Mr. Merritt too, and that both of us were trying to find a buyer for it. I don't know what Mr. Merritt was doing, I don't remember having talked to him along that line, about getting the best price we could for it. He said something to me once about selling it and I told him to secure the best price he could get and I would let him know whether I was willing for him to sell it or not. I was not trying very hard all the time to get a buyer I could get. I did sell the cotton; that is, I found the buyer. It is true I would not let Merritt sell it except on my approval. I didn't give him written authority to sell the property regardless of price, and I says, 'Get the price and then I will give you the authority if the price is suitable.' "

The negotiable instruments act (Ga. L. 1924, p. 148, sec. 109) provides that "notice of dishonor may be waived, either before the time of giving notice has arrived, or after the omission to give due notice, and the waiver may be express or implied." Assuming, without deciding, that the transaction in question was one in which notice of dishonor was necessary under the provisions of the statute, we think the evidence established conclusively and as a matter of law an implied waiver of such notice on the part of the defendant. The bank plainly did not purchase the cotton, and only held the bill of lading therefor as security for the ultimate payment of the drafts. To whom did the cotton equitably belong on its rejection and the dishonor of the drafts by the cotton growers association? There is nothing to show that the association could ever have been held upon the drafts, even if it might have been liable upon some contract to purchase the cotton. During the course of the delay, if the cotton had so advanced in price that the proceeds from a sale would have been more than sufficient to pay the drafts, would the defendant have claimed the excess, or would the bank have been entitled thereto as a profit upon a deal in cotton? If the defendant was discharged from liability upon the drafts because of the bank's failure to give him notice of dishonor, why did he then contend about the cotton at all? His assertion of the right to control the sale of the property held by the bank as security for the drafts was inconsistent with his claim of nonliability. In the writing which he

signed as set out above he authorized the bank to sell the cotton for *his* account and to credit drafts *due* the bank. This was an instruction to sell for his benefit, and unless he was the bank's debtor he had no interest to be served. The writing recognizes that some one is indebted to the bank upon the drafts. No other person than the defendant could have been so indebted.

The defendant made to the bank a proposition which contained an implied admission of liability, and the proposition was accepted and acted upon. Had it occurred to the bank that the defendant would later contest his liability, the bank might have declined to sell the cotton upon the terms limited and specified by the defendant, preferring to hold it as its own in the hope of finally selling for a price that would save the bank from loss. The evidence established as a matter of law a waiver of notice of dishonor. There is no suggestion that the proposition made and accepted as above indicated was advanced by way of compromise, and all the evidence relating thereto was admitted without objection.

It follows from what has been said that the instructions eliminating want of notice of dishonor as a defense were not erroneous. *Citizens National Bank* v. *Jennings,* 33 *Ga. App.* 659 (127 S. E. 657) ; Hongkong &c. Banking Corp. *v.* Lazard-Godchaux Co., 207 App. Div. 174 (201 N. Y. S. 771) ; Belch *v.* Roberts, 191 Mo. App. 243 (177 S. W. 1062) ; Richardson *v.* Kulp, 81 N. J. L. 123 (78 Atl. 1062) ; Stewart *v.* Soenksen, 173 Ill. App. 1 ; Louisa First Nat. Bank *v.* Anderson, 125 Va. 102 (99 S. E. 561) ; Creteau *v.* Foote &c. Glass Co., 40 App. Div. 215 (57 N. Y. S. 1103) ; Weil *v.* Corn Exch. Bank, 135 App. Div. 915 (119 N. Y. S. 1149), affirmed 63 Misc. 300 (116 N. Y. S. 665) ; Fashion Hat Frame Co. *v.* Ringel, 81 Cal. App. 556 (254 Pac. 275) ; County Sav. Bank *v.* Jacobson, 202 Ia. 1263 (211 N. W. 864) ; Morgan *v.* Huffman, 76 Mont. 396 (247 Pac. 326).

*Judgment affirmed.* *Jenkins, P. J., and Stephens, J., concur.*