(118 App. Div. 288)

### PERRY v. VAN NORDEN TRUST CO.

(Supreme Court, Appellate Division, First Department. March 22, 1907.)

1. BILLS AND NOTES—PREFERENTIAL PAYMENT—RELEASE OF INDORSER.

   The receipt by a creditor, from an insolvent corporation, of a preferential payment, contrary to the statute, of an indorsed note, is, in contemplation of law, no payment, and does not release the indorser.

2. CORPORATIONS — INSOLVENCY — PREFERENCES · TO CREDITORS — PAYMENT OF NOTE.

   Laws 1892, p. 1838, c. 688, § 48 (Stock Corporation Law) provides: That no conveyance, or payment by a corporation when insolvent or when its insolvency is imminent, with the intent of giving a preference shall be valid, and that every person receiving the same shall be bound to account to its creditors, but that no such conveyance, or transfer shall be void in the hands of a bona fide purchaser. Defendant trust company held four unmatured indorsed notes, aggregating $4,000, of a corporation which, after selling all its merchandise and fixtures, deposited with defendant $1,000, borrowing at the same time $3,000, which was credited on its deposit account with defendant, and as security for which it assigned to defendant all its unassigned outstanding accounts. The corporation, which was then insolvent, gave a check on defendant for $4,000 to defendant in payment of the notes, thereby denuding itself of practically all its assets. *Held,* that the payment of $1,000 to defendant, and the assignment of the outstanding accounts was preferential, contrary to the statute, and void.

   Ingraham and McLaughlin, JJ., dissenting.

Appeal from Special Term, New York County.

Action by Robert G. Perry, as trustee in bankruptcy, etc., against the Van Norden Trust Company. From the judgment, plaintiff appeals. Reversed.

Argued before PATTERSON, P. J., and McLAUGHLIN, INGRAHAM, CLARKE, and SCOTT, JJ.

J. G. Engel, for appellant.

Edward W. S. Johnston, for respondent.

SCOTT, J. In the year 1904 the Broadway Trimmed Hat Company, a domestic stock corporation, had a deposit account with the

defendant, trust company, and at various times obtained from that company loans represented by promissory notes and secured by the assignment of outstanding accounts. On May 23, 1904, the trust company held two promissory notes of the Trimmed Hat Company—one dated February 17, 1904, for $2,100, payable on demand, and secured by the assignment of outstanding accounts; and the other dated May 12, 1904, for $4,600, payable on demand, and also secured by the assignment of outstanding accounts. On these assigned accounts the defendant has collected $857.45 more than the amount, with interest, due on the notes. On the same date the defendant held four other promissory notes of the Trimmed Hat Company dated, respectively, February 1, 1904, March 7, 1904, and April 28, 1904; the first two being for $500 each, and the third for $3,000, each being payable four months after its date, and all being endorsed by one Max Feist. For these notes the defendant held no security save such as was implied by the indorsement of Max Feist. On said May 23, 1904, the Broadway Trimmed Hat Company sold out all its merchandise and fixtures. On the following day, May 24, 1904, it deposited the sum of $1,000 in the defendant trust company, and borrowed from said company the sum of $3,000, which was credited on its deposit account with said trust company, and as security for which the Trimmed Hat Company assigned to the trust company all of its outstanding accounts not theretofore assigned, as well as the equity in the accounts which had theretofore been assigned as security for the loans of February 17th, and May 12th. The Trimmed Hat Company thereupon drew a check upon said trust company for $4,000, which it delivered to the trust company in payment of the unsecured and unmatured notes of February 1st, March 7th, and April 28th. By these transactions, the Broadway Trimmed Hat Company denuded itself of practically all its assets, leaving nothing to meet the claims of the other creditors which aggregated about $10,000. On May 24th, a petition in bankruptcy was filed against the Broadway Trimmed Hat Company, and in due course the plaintiff was appointed its trustee in bankruptcy. This action is brought under section 48 of the stock corporation law (Laws 1892, p. 1838, c. 688), to recover the amount paid to defendant on May 24, 1904, as a preferential payment. The section, so far as material to this action, reads as follows:

"No conveyance, assignment or transfer of any property of any such corporation by it, or by any officer, director, or stockholder thereof nor any payment made, judgment suffered, lien created or security given by it, or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation shall be valid. * * * Every person receiving by means of such prohibited act or deed any property of the corporation shall be bound to account therefor to its creditors, or stockholders or other trustees. * * * Every transfer or assignment or other act done in violation of the foregoing provisions of this act shall be void. * * * No such conveyance, assignment or transfer shall be void in the hands of a purchaser for a valuable consideraiton without notice."

The terms of the act are very simple. All that is necessary in order that it shall become operative is that the corporation shall be insolvent, or its insolvency imminent, and that the payment shall have

been made or the security given with the intent on the part of the debtor to give a preference. The intent of the creditor, or his knowledge as to the insolvency of the debtor, or of the intent of the debtor is immaterial. If, however, the creditor parts with valuable consideration, and is without notice of the insolvency or its imminence, he stands in the position of a purchaser for value and without notice, and the transaction is not avoided. That the Broadway Trimmed Hat Company was insolvent on May 24, 1904, is indisputable, and there can be no doubt whatever that when it gave all its assets to one creditor, leaving claims amounting to $10,000, entirely unprovided for, it meant to prefer the creditor to whom the assets were given. It is not necessary to uncover the mind of a debtor in order to ascertain his intent, when the natural, probable, and indeed inevitable, consequence of his acts is to effect a preference.

The transaction of May 24, 1904, between the Trimmed Hat Company and the defendant cannot be treated or considered otherwise than as a device to give to defendant, under the guise of a new loan, security for the unsecured loan represented by the unmatured notes. The pretended loan of $3,000, the crediting of that amount on the deposit account of the Trimmed Hat Company, and the immediate payment of the amount to defendant as payment of the unsecured notes was obviously a mere bookkeeping device. The net result was that for its claim of $4,000 represented by the three unsecured notes, the defendant received a cash payment of $1,000, and an assignment of accounts, leaving its claim only $3,000 now represented by a single note. The case must be considered as if, on May 24th, the Trimmed Hat Company had paid $1,000 in cash on account of its $4,000 debt and had assigned the accounts as security for the balance of $3,000. In this view the case would be a simple one, and the plaintiff's right to a judgment perfectly clear, but for the fact that the notes for $4,000 taken up on May 24, 1904, bore the indorsement of Max Feist, conceded upon the trial to have been perfectly solvent and responsible.

If a creditor, holding security, innocently and apparently in the due course of business, accepts payment even from an insolvent corporation, and thereupon surrenders his security to which he cannot be restored, the payment cannot be said to be preferential and contrary to the statute, because the creditor has received the payment in good faith and upon a valuable consideration. If, however, the creditor has surrendered no security, the rule does not apply. The only security the trust company held was the indorsement of Max Feist, and that security it will not have lost even if it now be required to return to the trustee the money, and the accounts or the proceeds of the accounts, which were assigned to it on May 24, 1904. Ordinarily, of course, the payment of a note by the maker terminates the liability of the indorser, but the receipt of a preferential payment, contrary to the statute, of an indorsed note, is in the contemplation of law no payment at all, and does not release the indorser. Swarts v. Fourth Nat. Bank, 117 Fed. 1, 54 C. C. A. 387; Petty v. Cooke, L. R. 6 Q. B. 790–796; Brandt on Suretyship (3d Ed.) § 368; Williams v. Gilchrist, 11 N. H. 535; Watson v. Poague, 42 Iowa, 582. The defendant

trust company in surrendering the notes indorsed by Feist, did not discharge him, but retained whatever right of recourse it then had against him. So far as he was concerned, its position remained unaltered, and the debt remained unpaid, and it does not appear that the defendant has in any way lost its right of recourse against Feist, the indorser. If it appeared, as it does, not in the case as presented to us, that the defendant believing in good faith that its claim had been discharged by payment, and, acting upon that belief, had by act or omission effectually discharged the indorser a different question might be presented, which, however, it is not necessary to consider at present. We are therefore of the opinion that, upon the evidence, the payment to the defendant trust company of $1,000 on May 24, 1904, and the assignment to it on that day of the accounts until then unassigned, and of the equity in the accounts previously assigned was preferential, contrary to the statute, and void, and that the plaintiff is entitled to recover the $1,000, and whatever may have been collected upon the accounts and the equities attempted to be assigned, and a reassignment of so many thereof as have not been collected.

Judgment should be reversed, and a new trial granted, with costs to appellant to abide the event.

PATTERSON, P. J., and CLARKE, J., concur.

INGRAHAM, J. (dissenting). The only indebtedness that existed in favor of the defendant against the Broadway Trimmed Hat Company was that evidenced by three promissory notes made by the corporation to the order of itself, and indorsed by one Max Feist. These notes had been discounted by the defendant, and belonged to it. It was conceded upon the trial, and the court found that the indorser was solvent, and the bank could have collected the note from him if it had not been delivered by the defendant to the maker. This being the situation, the corporation, having on deposit with the defendant a sum of money exceeding the amount of these notes, paid to the defendant the amount thereof, although not yet due, and obtained a delivery of the notes from the defendant. It subsequently appeared that this corporation was insolvent; but it is not alleged that the defendant had any knowledge or reason to suppose that it was insolvent or had notice of any fact to put it upon inquiry. It held these notes, indorsed by a perfectly solvent indorser, and it had a right to dispose of them to any one that it pleased. At the request of the maker of the notes, it transferred them to it and received the value thereof. Upon the trial the plaintiff conceded, and the court found, that the defendant acted in good faith in its transactions with the Broadway Trimmed Hat Company; that the defendant did not at any of the times mentioned have any knowledge or notice of any intent on the part of the Broadway Trimmed Hat Company or its officers to give to this defendant a preference over other creditors of the said company; that the defendant did not at any of the times mentioned have any intent on its part to acquire a preference over other creditors of the Broadway Trimmed Hat Company, and that neither said company nor its officers had any intent in any of its transactions with this defendant to create thereby a preference to this defendant

over other creditors of the said Broadway Trimmed Hat Company; and that no transaction had by said company with this defendant did in fact create any preference to the defendant over other, creditors of the Broadway Trimmed Hat Company.

I think that these findings are sustained by the evidence. What the defendant had, and what it was entitled to retain was the obligations of the Broadway Trimmed Hat Company, secured by the indorsement on the notes. It had a perfect right to sell those obligations; and a sale of the instruments, either to the maker of the notes, to the indorser, or to a third party, was not a mere payment of the indebtedness, but was a transfer of the obligations, including the liability of the maker of the notes, and the indorser. A transfer of that paper to the maker, with the indorsement intact, and the indorser liable for the payment of the notes when due, transferred the right of the defendant to collect the notes. I cannot see that there is any difference between a transfer of the obligation of an indorser upon a promissory note and the transfer of any other property held by a creditor to secure the payment of an indebtedness.

It is suggested, that notwithstanding this transfer, the defendant, upon the payment of the amount received by it from the corporation to the trustee in bankruptcy, would have the right to enforce the obligation of the indorser; but the obligation of the indorser necessarily depends upon the notes being presented for payment when due, and notice of nonpayment thereof to the indorser; and if these notes were never presented for payment or notice of nonpayment given to the indorser, I cannot see how the indorser can be held liable. By the defendant's surrendering the notes to the maker, it parted with all interest in the notes, and put it out of its power to hold the indorser liable, and, so far as appears, the notes never were presented for payment when they became due so as to hold the indorser. To treat this transfer of an existing valid obligation which the bank could enforce as a simple preference, void under the statute, without requiring the corporation, or the trustee succeeding to its right, to restore to the defendant the notes which it delivered to the corporation upon the payment of the money, with the liability of the indorser intact, would be, it seems to me, a violation of settled legal principles. The action is in equity to enforce a liability, designed to prevent the payment of favored creditors by a corporation. It seems to me that this statute is not applicable where the substantial transaction is not solely the preference of a debt due by a corporation, but involves a transfer by a creditor of property or security which it held to secure the payment of the indebtedness, and where the creditor acts in entire good faith without any notice of the insolvency of the debtor or of any intent of its part to create a preference.

It has been assumed that the intent of the creditor, or any knowledge or information sufficient to put the creditor upon inquiry as to the solvency of the debtor, or as to the intent with which a payment was made, is entirely immaterial; that all that has to be proved to entitle a trustee or receiver of a corporation to recover is an undisclosed intent on the part of the debtor corporation to prefer one creditor over others. The statute povides that:

"No  *  *  *  payment made  *  *  *  by it (a corporation) or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with intent of giving a preference to any particular creditor over other 'creditors of the corporation shall be valid."

If the question were an open one, I should have considerable doubt as to whether the intent to give a preference to a particular creditor must not be an intent in which both the party making the payment and the party receiving the payment participated. A corporation transacting business, apparently solvent and in good credit, giving and receiving credit and paying its debts in usual course as they become due, may still be insolvent, although its condition be concealed from its creditors and others transacting business with it. It does not seem that it could have been the intent of this statute to justify a recovery from creditors whose debts have been paid, upon proof that the corporation was insolvent, and that its officers making the payment knew that it was insolvent, and from that adduce the inference that they or the corporation intended to create a preference. If this construction of the law is correct, years after a payment has been made by a corporation to a creditor, a trustee in bankruptcy or a receiver can recover back the money actually paid in satisfaction of an existing debt, merely because of an undisclosed intent of an officer of the corporation making the payment, when the money was received by the creditor in good faith in payment of the corporation's conceded indebtedness to it. But certainly, where it appears that the transaction was not solely the payment of a debt, but obtaining from a creditor the security which the creditor held for the payment of a debt, a finding that no preference was intended within the statute should be sustained.

I think, therefore, that this judgment should be affirmed.

McLAUGHLIN, J., concurs.