# Richmond.

## J. T. INGE v. C. E. BRYANT.

### December 17, 1925.

1. NEGOTIABLE INSTRUMENTS—*Presentment—Notice of Dishonor—Waiver of Notice—Case at Bar.*—The instant case was an action against an endorser of a note, and the defense was that no presentment was made and no notice of protest sent to the endorser. Plaintiff had purchased a number of notes from defendant, among them being the note in question and one other by the same maker. The first note of this m ker, upon default, was duly protested. It appeared in evidence that the plaintiff bought the notes relying exclusively upon defendant's responsibility. The second note upon which the present action was brought was not presented and no notice of protest sent the endorser. Upon failure of payment of the first note, both plaintiff and defendant seemed to proceed upon the presumption that the second note would not be paid, and defendant, without reference to the failure to give notice of dishonor, attempted to arrange for its payment, and the facts were sufficient to enable the court to hold that the endorser of the note dealt from the beginning to the end of his transaction with the holder, plaintiff, entirely without reference to the necessity of any notice of dishonor.

     *Held:* That considering the relations borne by the parties towards each other, before the note in question became due, what took place afterwards was equivalent to an acknowledgment of liability and to an implied waiver of the failure to make demand and send the notice.

2. CONTINUANCE—*Action on Note—Amendment Alleging Note Listed for Taxation—Section 6104 of the Code of 1919—Case at Bar.*—In the instant case, an action on a note, plaintiff was allowed to amend his declaration so as to allege that the note sued on was listed and assessed for taxation and plaintiff was permitted to testify to that effect. Whereupon, counsel for defendant moved the court for a continuance for this case, which the court overruled.

     *Held:* That the overruling of the motion for a continuance at that point in the proceedings, and under the circumstances, was in no way prejudicial to the defendant. Whether or not the state collects its taxes is not in its proper meaning involved in the substantial "rights of the parties," as that term is used in section 6104 of the Code of 1919.

Opinion.

3. AMENDMENTS—*At any Stage of the Trial—Section 6104 of the Code of 1919 Liberally Construed.*—Section 6104 of the Code of 1919 authorizes the trial court, in furtherance of justice, to allow the pleadings to be amended at any stage of the trial, and directs the court to disregard any error or defect which does not affect the substantial rights of the parties. The section is to be liberally construed.

4. APPEAL AND ERROR—*Cross Assignment—Attorney's Fee—Exception— Case at Bar.*—In the instant case, in the brief for defendant in error, plaintiff in an action on a note, attention was called to the fact that after the jury had returned their verdict, the court, on motion of plaintiff, allowed an attorney's fee of $50.00, which, however, was not included in the judgment. The order of the court made no mention of any motion of this character, and contained nothing concerning an attorney's fee. There was no exception by plaintiff in connection with this matter.

*Held:* That, there was a total lack of basis for an assignment of cross error by the defendant in error and that the Special Court of Appeals was unable to consider the question at all.

Error to a judgment of the Circuit Court of Lunenburg county, in an action of assumpsit. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Blackwell & Blackwell*, for the plaintiff in error.

*W. Moncure Gravatt*, for the defendant in error.

CRUMP, P., delivered the opinion of the court.

In the early part of July, 1920, C. E. Bryant at the instance of Mr. George E. Allen, attorney at law, residing at Victoria, in Lunenburg county, came from his home in Marion, in southwest Virginia, to Kenbridge, in Lunenburg county, for the purpose of purchasing some notes held by R. J. Barlow and others. The plaintiff in error, J. T. Inge, a resident of Lunenburg county, learning that Mr. Bryant was at Kenbridge

for the purpose of purchasing paper approached Mr. Bryant and told him that he had some very good paper he would like to sell to him, as he had loaned out a good deal of money and he could not very readily carry the paper and he was building a warehouse which necessitated his having about $4,500.00 in cash; that he had something like $12,000.00 in secured paper and would like to sell about $4,500.00 worth, since he needed the money to finish the building. Bryant investigated the financial ability of Inge and concluding that Inge's name on the paper made it perfectly good, agreed to buy some of the notes which he had. During the negotiations, Inge stated to Bryant: "I will endorse the paper and that makes the paper absolutely good, and if they do not pay it, I will." Bryant gave no attention to the makers of the paper, nor to the real estate upon which it was secured and did not inquire as to the location or value of the same. Among the notes so purchased from Inge were two notes, each for $825.00, executed by one C. A. Revis to his own order on January 1, 1920; one payable two years and the other three years after date. These notes, with the other paper, were endorsed by J. T. Inge and delivered to Bryant. The first Revis note becoming due January 1, 1922, was sent to Kenbridge for collection and not having been paid it was protested at the Kenbridge Bank, of which Mr. Barlow was cashier. The second Revis note, due January 1, 1923, was not sent on for collection and so no presentment was made, and hence no notice of protest sent to the endorser, Inge. This action was subsequently instituted by Bryant against Inge to recover the amount of the note due January 1, 1923. The defense was that no presentment had been made and no notice of protest sent to Inge, the endorser. In avoidance of

this defense, the plaintiff, Bryant, contended that Inge had waived the presentment and notice of protest to him as endorser, and that further, under the circumstances disclosed by the evidence, Inge not being an endorser of the paper while in his hands, and having stated that if the maker did not pay it he would, and endorsed it in order to make sale of it to Bryant, he, Inge, was in all events primarily liable to Bryant. Upon the trial, under the instructions of the court, the jury rendered a verdict for the plaintiff for the amount of the note.

In taking up the question of waiver, the further facts to be considered are as follows:

In the late spring or early summer of 1922, Inge wrote to Bryant asking for an extension on the paper held by Bryant, Bryant testifying that he understood that letter to include the Revis note still to become due as well as the note which was then past due. Inge testified that his recollection was that he wanted an extension only of past due paper. In answer to a question as to what note he had reference to in a letter to Bryant in the spring of 1922 asking for an extension, he said: "I could not tell you to save my life." The next question and answer being: "Q. You do not remember that? A. It was bound to have been a past due note." This letter had been misplaced and could not be produced. Bryant further testified: "I took it that he wanted an extension of the time on the paper that was in my possession that I had bought of him. All of it was the way I took it." Again he says: "The substance of the letter was that times were a little bit hard; that farmers in that section were somewhat depressed; and wanted to know if I would not extend the time awhile on this paper, stating that it was good and would be paid." Nothing seems to have come

of this request so far as the testimony shows. Mr.. Allen, who was a brother-in-law of Bryant and acting as his representative, testified that Bryant wrote him in December, 1922, in reference to the paper and asked him to write Mr. Inge and tell him that the notes would have to be paid; that in compliance with Bryant's request he wrote and mailed to Mr. Inge on December 23, 1922, the following letter:

"December 23, 1922.

"MR. J. T. INGE,

Kenbridge, Va.

"DEAR MR. INGE:

"I am in receipt of a letter from Mr. Bryant, in which he advises me that the William Bridgforth notes of $615.75 each, W. W. Winn note of $550.00, and the two C. E. Revis notes of $825.00 each will all have to be paid. They are all past due, with the exception of the Winn note, which will be due next month. Mr. Bryant requested me to write to each of these parties in regard to the matter and advise them to make their arrangments to take up this paper. Mr. Bryant also asked me to get in touch with you in reference to the matter. I hope none of the parties will be seriously inconvenienced, and that all of them may be able to make their arrangements to take up this paper.

"Very truly yours."

It is apparent from the testimony that the reference to the Winn note "which would be due next month" was an error as it was the second Revis note which then became due. Mr. Inge knew that the second Revis note would be due on January 1, 1923. Inge did not make any reply to this letter until after the paper was due and on January 10, 1923. Allen testified

that on that date Inge came to his office and told him that he wanted to pay one of the Revis' notes and the interest on both, and wanted to get Mr. Bryant to extend the time on the other Revis note; that he would not undertake to state from recollection exactly what was said, but on the same date he wrote to Bryant the proposition made by Inge, and that letter showed what the proposition was.   The letter is as follows:

"January 10, 1923.

"Mr. C. E. BRYANT,
     "Marion, Va.
"DEAR MR. BRYANT:

"Mr. Inge has just been in to see me in reference to my letter which I wrote him several days ago in regard to the notes which you hold and which you bought of him.   He tells me that the Winn notes will all be paid shortly; that arrangements are now being made to that effect.   As to the William Bridgforth notes, he desires that you proceed to have the trustee sell.   He says the property will pay out beyond question, and he does not care to carry the matter any longer.

"As to the Revis notes, Mr. Inge wants to pay one of these notes, with interest on both, but wants you to carry the other note for one more year.   I told him that I would write you in regard to the matter.   I shall be glad to hear from you at your earliest convenience so that I may advise Mr. Inge just what you wish done in the premises.

"With love for each of you, I am,
                              "As ever yours."

Bryant subsequently wrote declining to grant the extension desired on the Revis notes.   Mr. Inge testified that on January 10th he was not aware that the

Revis note due January 1st had not been presented and protested, but he knew he had not received any notice. Inge testified further that he learned in the latter part of January that the note had not been protested. He did not mention this fact to Allen until apparently some time in March, about the time when the real estate was sold under the deed of trust. Inge testified in this respect: "I think it was the day the land was sold I talked to Mr. Allen and I do not recollect exactly what the conversation was. I told him I did not think I would be responsible for this note as I did not get any notice upon the maturity date, but if I could work it out of the place in any way out of the tenant I would turn the money over to Mr. Bryant." Allen testified that in conversation on January 10th, Inge said nothing to him to indicate that he regarded himself as released from liability on the note by reason of any omission with reference to the notice of dishonor. That the first time he heard of that matter was some time afterwards when Mr. Barlow called his attention to the fact that the note had not been protested and intimated but did not say so in terms, that he judged Mr. Inge would raise that objection to paying the note; that this was long after the note was due and when they were preparing to advertise the property for sale; that some little time after that he saw Mr. Inge and the latter told him that the note was not protested and he thought he was released. On February 13, 1923, Mr. Inge wrote Mr. Allen the following note:

"February 13, 1923.

"MR. GEO. E. ALLEN,
    "Victoria, Va.

"DEAR SIR:
    "I understand that the Wm. Bridgforth land paid

Mr. Bryant out o. k. Now this leaves the C. A. Revis notes in his hands for collection, and I believe that will also pay him out, and he had just as well go ahead and sell this land. I sold him these notes at a big discount and also gave him the accrued interest to take these notes, and he must protect himself in the sale of this land as I have been up against so much of late I am hard up for money and cannot raise the money to buy if I wanted to.

"Yours very truly,
"(Signed) J. T. INGE."

The real estate on which the Revis notes were secured was sold under the deed of trust in the following month of March and was bought in by Mr. Inge and J. P. Ripberger jointly. Nothing having been paid on the note in question here, this suit was brought upon it.

The foregoing is an outline of the facts established by the testimony, and wherever there has been any dispute by Inge of any fact testified to by Bryant or Allen it has been indicated. Bryant and Allen testified for the plaintiff and Mr. Inge rather briefly for the defendant. Mr. Barlow testifying merely to the fact that the note had not been presented and protested and therefore no notice sent.

Without passing upon the question whether Inge in selling this paper, and in making the statement as to the endorsement of it in connection with its sale, bound himself primarily for its payment, we will consider and give weight to that part of the testimony in connection with the claim that he waived any notice of nonpayment and dishonor. The statute of Virginia in the uniform negotiable instruments act, section 5671 of the Code, provides as follows: "Notice of dishonor may be waived either before the time of

giving notice has arrived, or after the omission to give due notice, and a waiver may be express or implied." We are of opinion that in this case the facts are sufficient to enable the court to hold that the endorser of the note dealt, from the beginning to the end of his transactions, with the holder entirely without reference to the necessity for any notice of dishonor and that the evidence is sufficient to establish a waiver of notice with a fair degree of clearness. It is to be inferred from the evidence that Mr. Inge knew that Bryant, as a purchaser of the notes from him, made no inquiry concerning the makers; had no knowledge of their financial ability nor of the character of real estate upon which they were secured, and that he bought the notes relying exclusively upon his, Inge's, responsibility. Independent of any question as to primary liability on the part of Inge, these facts have weight in determining the fact of an implied waiver of notice. In fact the endorser here was the seller of the notes and was in a sense an accommodated party, and the purchaser of the notes was looking to him for payment rather than to the makers as in an ordinary case. When the first note was sent on for collection it was naturally put in a bank and when not paid the bank of course protested it. The dealings with this note were sufficient indication that the second Revis note would not be paid and it was useless to call upon the maker. The dealings concerning the first note after it became due were altogether with Mr. Inge, who does not seem to have regarded the fact of presentment and protest as material, for the evidence does not disclose any affirmative statement about notice of dishonor on that occasion being sent to him. Exactly what became of this first note the evidence does not disclose, unless it was paid out of the proceeds of the sale under the

INGE *v.* BRYANT, 144 VA. 782.       791

deed of trust, the notes being payable in priority in accordance with their maturity dates.    Upon the failure of payment of the first Revis note, Inge and certainly Bryant seemed to have proceeded upon the assumption that the second note would not be paid; and we take it from the evidence that that assumption was perfectly justified.

The cases involving the question of implied waiver of notice and dishonor of a negotiable note are very numerous and depend very largely upon the facts of each case.    The general rule before the adoption of the uniform act was practically the same as the expression of the law in the statute, though the statute states it perhaps more emphatically.    In *Yeager* v. *Farwell*, 13 Wallace 6, 20 L. Ed. 476, the Supreme Court, of course, before the passage of the uniform act, says:  "Although, accurately speaking, there can only be a waiver of demand and notice by the endorser before the note is due, yet after it is due he can waive proof of them; or what is more to the purpose, he can so act towards the holder of the note as to render the fact that demand was not made or notice given wholly immaterial."

[1] In the instant case, we are of opinion, considering the relations borne by the parties towards each other before the note in question became due, that what took place afterwards was equivalent to an acknowledgment of liability and to an implied waiver of the failure to make demand and send the notice.    Mr. Inge lived nearby Kenbridge, his post office address being in that place, and if a notice was sent it should have been received by him within two or three days after the first of January.    The fact that on January 10th and for sometime afterward he paid no attention to the omission to send him notice, but sought to

arrange for payment in a manner indicating his liability, is a circumstance of this case which, taken with all other facts, present a case in which the conduct of the endorser is, in the language of the Court of Appeals in *First National Bank* v. *Anderson*, 125 Va. 102, 99 S. E. 561, "tantamount to an implied waiver of formal notice of dishonor." Mr. Bryant had commenced these transactions with the reliance upon and a right to rely upon the financial responsibility of Mr. Inge, as was a fact in the case just cited. The dealings between the parties subsequent to the maturity of the note in the instant case give certainly as great ground to imply a waiver in connection with the other facts as the circumstances in the case just cited.

A somewhat similar case is found in *Thompson* v. *Curry*, 79 W. Va. 771, 91 S. E. 801; *Quaintance* v. *Goodrow*, 16 Mont. 376, 41 P. 76.

The evidence was sufficient to establish an implied waiver of notice of dishonor and it necessitated a verdict for the plaintiff. It is unnecessary, therefore, to consider exceptions taken to certain instructions granted by the lower court on the trial. At the end of the plaintiff's testimony, the defendant, Inge, moved the court to exclude all the evidence for the plaintiff and the motion was overruled. Error is assigned in this regard. We think it manifest that this assignment of error is without merit.

[2, 3] A further assignment of error is made based upon the refusal of the court to grant a continuance under the following circumstances. The bill of exceptions in this respect states that:

"After all the evidence of both plaintiff and defendant was introduced, as denoted in certificate No. 1 of this record, counsel for plaintiff made a motion to amend his declaration so as to allege that the note

sued on was listed and assessed for taxation, which amendment the court allowed and thereupon C. E. Bryant, plaintiff, was permitted to be recalled and to testify in this behalf as set out, page eighteen, certificate No. one (M. S. R.). Whereupon, counsel for defendant moved the court for a continuance of this cause, which motion the court overruled, and defendant, by counsel, excepted."

The statute—Acts 1922, page 553—requires such an allegation to be made. The object of that statute is to compel the holder of bonds, notes or other evidences of debt, to return this class of property for assessment and taxation, under penalty of rendering a suit thereon ineffective. It occurs in that portion of the general revenue act, commonly known as the tax bill, relative to the classification of choses in action for taxation purposes. There was no demurrer to the declaration in this case and it is clear that this matter could not affect the merits of the case on the issue tried between the parties. The court did not abuse its discretion, but properly allowed the case to be concluded on the trial had before it, the parties having had full opportunity to present all the evidence bearing on the issue, which they might desire to adduce. Overruling the motion for a continuance at that point in the proceedings, under the circumstances, was in no way prejudicial to the defendant. Section 6104 of the Code authorizes the trial court, in furtherance of justice, to allow the pleadings to be amended at any stage of the trial, and directs the court to disregard any error or defect which does not affect the substantial rights of the parties. Whether or not the State collects its taxes is not, in its proper meaning as applied to the issue being tried, involved in the substantial rights of the parties. The statute is to be

liberally construed. *Bailey* v. *Hines*, 131 Va. 421, on pages 431-32, 109 S. E. 470.

[4] In the brief for the defendant in error attention is called to the fact that, after the jury had returned their verdict, the attorney for the plaintiff, Bryant, moved the court to allow a reasonable attorney's fee, viz: Ten per cent, as provided for in the note, and that the court did allow a fee of fifty dollars, which, however, was not included in the judgment, the latter embracing only the exact amount found in the verdict of the jury. The order of the court makes no mention of any motion of this character and contains nothing concerning an attorney's fee. It recites simply the fact that the jury retired and brought in their verdict; the motion for a new trial was overruled and judgment rendered on the verdict. There is no exception by the plaintiff in connection with this matter. It is manifest that there is a total lack of basis for an assignment of cross error by the defendant in error under the rules of this court. Therefore, we find ourselves entirely unable to consider this question at all. For the reasons above given, we find no error in the final judgment of the lower court and it is affirmed.

*Affirmed.*