# Richmond.

## G. D. Horner, et als. v. The First National Bank of St. Mary's of Leonardtown, Maryland.

### March 1, 1928.

1. Bills, Notes and Checks—*Action Against Endorsers—Allegation of Presentment for Payment and Notice of Dishonor*—A notice of motion for judgment against the endorsers of a negotiable note must contain allegations of presentment for payment and notice of dishonor to the endorsers, and a notice without these allegations is bad upon demurrer.

2. Bills, Notes and Checks—*Demand for Payment—Notice of Dishonor—Waiver.*—Presentment for payment and notice of dishonor to endorsers may be waived either expressly or by the conduct of the parties.

3. Bills, Notes and Checks—*Demand for Payment—Notice of Dishonor—Waiver—Case at Bar.*—The instant case was a suit against the endorsers of a note. Complainant, the holder of the note, was a bank in Maryland. The note was due March 20, 1924. On February 18, 1924, it was sent to a bank at Cape Charles, Virginia, for collection and on March 24, 1924, complainant received from the collecting bank a remittance and a renewal note for the balance endorsed by the same parties and dated March 20, 1924, the date on which the original note fell due. This latter note was marked "renewal" on its face, and was paid at maturity by the endorsers. There was a judgment for complainant and defendants assigned as error that the bill did not allege that the note was presented for payment and notice of dishonor given the endorsers.

   *Held:* That in view of these circumstances there was a waiver of formalities and that every party in interest had notice of every essential fact.

4. Bills, Notes and Checks—*Action Against Endorsers—Assignment of Error—Rule 22 of the Supreme Court of Appeals—Notice of Dishonor—Case at Bar.*—The instant case was a suit against the endorsers upon a note. There was a decree for complainant and defendants appealed. Defendants contended that they were not liable because the bill did not allege that the note was presented for pay-

ment at maturity and notice of dishonor given the endorsers.   There was a demurrer by defendants to the bill and the matters relied upon to sustain it were set out in detail, but the grounds of demurrer did not mention the failure of the bill to set out the presentment and notice of dishonor.

*Held:* That the assignment of error was without merit, and moreover rule 22 of the Supreme Court of Appeals, providing that objections not made to the action of the trial court with reasonable certainty will not be considered on appeal except for good cause shown, applies.

5. DEMURRER—*Grounds of Demurrer—Demurrer Searches the Record.*—A demurrer searches the record, but when its grounds are stated this search does not go beyond their examination.   Were this not true, such a statement would be a pitfall and not an aid.   The demurree would be worse off with it than without it.

6. BILLS, NOTES AND CHECKS—*Bankruptcy of Maker—Payments by Maker Recovered as Preferences by Trustee in Bankruptcy—Liability of Endorsers—Case at Bar.*—In the instant case complainant bank was a holder of a note upon which defendants were endorsers.   The maker of the note made two payments on the note within four months of his involuntary bankruptcy, and afterwards the endorsers paid the balance and complainant's agent surrendered the note to them.   The trustee in bankruptcy obtained a judgment against complainant for the maker's payments made within four months of the bankruptcy of the maker as voidable preferences under the bankrupt act.   Complainant brought the instant suit against defendants, endorsers, to recover the amount of the judgment against it, in favor of the bankrupt's estate.   Defendants demurred on the ground that the bill failed to disclose any cause of action against them and on the ground that the bill showed on its face that the note was duly paid and cancelled.

*Held:* That the defendants were liable to complainant.

7. BANKRUPTCY—*Endorsers or Sureties upon the Obligations of an Insolvent Debtor—Creditor Accepting Payments from Insolvent Debtor which he is Afterwards Required to Surrender to Trustee in Bankruptcy.*—The accommodation makers, endorsers, or sureties upon the obligations of an insolvent debtor are not discharged from liability to pay them by the innocent acceptance, by the creditor, of payments thereon from the insolvent debtor which the creditor is subsequently required to, and does, surrender to the latter's trustee in bankruptcy as a condition of the allowance of its claim under section 57-g of the bankrupt act.

Appeal from a decree of the Circuit Court of Northampton county.   Decree for complainant.   Defendants appeal.

*Affirmed.*

The opinion states the case.

*James E. Heath,* for the appellant.

*W. A. Dickinson* and *J. Brooks Mapp,* for the appellees.

Holt, J., delivered the opinion of the court.

The parties to this suit, plaintiff and defendants, will be designated as they were in the court below. The material charges in plaintiffs' bill are:

"On December 21, 1923, your complainant became the holder for value of another note in the amount of two thousand dollars ($2,000.00), executed by the said T. G. Fisher and endorsed by J. V. Moore, G. D. Horner, W. D. Williams, E. M. Kellogg, John T. Daniel and J. A. Byrd, bearing date November 20, 1923, and maturing March 20, 1924. On February 18, 1924, your complainant sent this said note to the Farmers and Merchants Trust Bank at Cape Charles, Virginia, for collection and on March 24, 1924, your complainant received through the said Farmers and Merchants Trust Bank, a payment of one thousand dollars ($1,000.00) by T. G. Fisher on this said note and a renewal note dated March 20, 1924, in the amount of one thousand dollars ($1,000.00), and payable on demand, endorsed by J. V. Moore, G. D. Horner, W. D. Williams, E. M. Kellogg, John T. Daniel, and J. A. Byrd. Under date of July 11, 1924, the said T. G. Fisher made a payment on this latter note of one hundred dollars ($100.00) through the Farmers and

Merchants Trust Bank, and on October 24, 1924, your complainant received through the Farmers and Merchants Trust Bank the balance due on this note of nine hundred dollars ($900.00) and interest of thirteen dollars and fifty cents ($13.50), paid by the endorsers aforesaid; and said Farmers and Merchants Trust Bank as collecting bank for your complainant surrendered the said note to the party or parties, paying the balance due thereon, and

"On July 14, 1924, an involuntary petition in bankruptcy was filed by creditors of the said T. G. Fisher, and on the 24th day of September, 1924, the said T. G. Fisher was duly adjudged a bankrupt, and

"On February 15, 1925, by virtue of a judgment of the United States District Court for the District of Maryland, rendered in the suit of Otto Lowe, trustee in bankruptcy for T. G. Fisher against your complainant, your complainant was ordered to pay to the trustee in bankruptcy of the said T. G. Fisher bankrupt estate the sum of eleven hundred dollars ($1,100.00) with interest on one hundred dollars ($100.00) from July 11, 1924, and costs of suit in the amount of one hundred seventy-two dollars and three cents ($172.03), upon the ground that the payments by the said T. G. Fisher of one thousand dollars ($1,000.00) on March 24, 1924, and of one hundred dollars ($100.00) on July 11, 1924, were transfers and payments made within four months of the bankruptcy of the said T. G. Fisher, and that said payments or transfers were voidable preferences under the bankruptcy acts."

To this bill the defendants demurred and assigned the following grounds therefor:

"First: The alleged cause of action is not cognizable in a court of equity.

"Second: The said bill fails to disclose any cause of action against these defendants.

"Third: The said bill shows on its face that the note of two thousand ($2,000.00) dollars of December 21, 1923, was duly paid and cancelled, and that, accordingly, there is no liability upon these defendants as to such note or any part thereof."

The first assignment of error is thus stated:

"So far as the bill discloses, there was plainly no liability upon your petitioners with regard to this $2,000.00 note after March 20, 1924. It was necessary, if your petitioners were to become liable on it, that it should be presented for payment on March 20, and that, if not paid by the maker, notice of this fact should be given the endorsers, or that these requirements should be waived. It was further necessary that the bill should allege these necessary facts. The bill does not allege them. It says absolutely nothing of what happened on March 20, 1924—except that the note was not paid. So that, so far as the allegations of the bill disclosed, when Fisher made the payment of $1,000.00 on March 24, 1924, your petitioners had all been released from any liability on the said note."

It may be noted in passing that there is error here in the statement that the payment of $1,000.00 was made on March 24, 1924. There is no such allegation in the bill.

[1, 2] In the case of *Security Loan & Trust Company* v. *Fields*, 110 Va. 827, 67 S. E. 342, it was held that a notice of motion for judgment against the endorsers of a negotiable note must contain allegations of presentment for payment and notice of dishonor to the endorsers, and that a notice without these allegations was bad upon demurrer. But it was also held in that case, and with more elaboration in *Inge* v. *Bryant*, 144 Va. 782, 130 S. E. 773, that such notice might be waived either expressly or by the conduct of the parties.

[3] Plaintiff is a bank in Maryland. This note was due March 20, 1924. On February 18, 1924, it was sent to a bank at Cape Charles for collection, and on March 24, 1924, it received from that collection agent a remittance of $1,000.00 paid thereon and a renewal note for $1,000.00 endorsed by the same parties and dated March 20, 1924, the date on which the original note fell due. This $1,000.00 note was marked "renewal" on its face and was paid at maturity by these endorsers. When we remember the original note and its amount, the payment thereon, the amount of the new note and its date, the fact that it was a renewal, the time that elapsed between the payment on the old note and the receipt by the payee of the renewal and the geographical location of Leonardtown and Cape Charles we are led irresistibly to the conclusion that there was a waiver of formalities and that every party in interest had notice of every essential fact.

[4, 5] If this were not true, the same results would still follow. There was a demurrer and the matters relied upon to sustain it were set out in detail. A demurrer searches the record, but when its grounds are stated this search does not go beyond their examination. Were this not true, such a statement would be a pitfall and not an aid. The demurree would be worse off with it than without it. There is nothing in that filed to put the plaintiff on notice. Had these omissions been pointed out, they could probably have been supplied by an amendment at the bar of the court, and in any event an opportunity to make such an amendment should have been given. Moreover, in such circumstances under rule 22 of "Rules of Court" objections to matters requiring the judgment of the trial court must be made in that court and with reasonable certainty, and unless it appears from the record that

such was done, they will not be considered on appeal, except for good cause shown.

There is no merit in this assignment of error.

[6] The second assignment is thus stated:

"The theory upon which plaintiff proceeded in this suit, and upon which the court acted, was that the holder of a note who has knowingly accepted a preferential payment of the same from an insolvent maker, and surrendered up the note to the maker, can, if bankruptcy proceedings should be instituted against the maker within four months thereafter, and the trustee in bankruptcy should recover the amount of the preference from him (the holder), in turn hold the endorsers liable just as though the said payment had not been accepted and the note surrendered up—and this notwithstanding the endorsers did not know that the payment was a preference or that the maker was insolvent." This, the defendants say, is not law. They say that the recovery back of this payment is proof of a fraudulent preference and proof that the payee knew it or had reasonable cause to know it though the defendants did not. In support of this *Bartholow* v. *Bean*, 18 Wall. 635, 2 L. Ed. 866, is cited and relied upon. In the course of his opinion Mr. Justice Miller said:

"It is very obvious that the statute intended, in pursuit of its policy of equal distribution, to exclude both the holder of the note and the surety or endorser from the right to receive payment from the insolvent bankrupt. It is forbidden. It is called a fraud upon the statute in one place and an evasion of it in another. It was made by the statute equally the duty of the holder of the note and of the endorser to refuse to receive such a payment.

"Under these circumstances, whatever might have

been the right of the endorser, in the absence of the bankrupt law, to set up a tender by the debtor, and a refusal of the noteholder to receive payment, as a defense to a suit against him as endorser, no court of law or equity could sustain such a defense, while that law furnishes the paramount rule of conduct for all the parties to the transaction; and when in obeying the mandates of the law the endorser is placed in no worse position than he was before, while by receiving the money the holder of the note makes himself liable to a judgment for the amount in favor of the bankrupt's assignee, and loses his right to recover, either of the endorser or of the bankrupt's estate."

This ruling was adopted *In re George M. Hill Company* (C. C. A.), 130 Fed. 315, 66 L. R. A. 68, where the court felt constrained to follow *Bartholow* v. *Bean.* It was approved also in *Re Ayers,* Fed. Cas. No. 685, and in *Northern Bank* v. *Cooke,* 76 Ky. (13 Bush) 340.

Of course, every statement made by the United States Supreme Court is entitled to the utmost respect, and in its long history few greater judges have ever graced that august tribunal than Mr. Justice Miller, but Homer himself sometimes nods.

Reliance is also placed upon *Reber* v. *Shulman* (C. C. A.), 183 Fed. 564. There it was held that a trustee in bankruptcy could not recover from an accommodation endorser, who knew nothing about the transaction, payments made by an insolvent maker. The court said this was too plain for argument. In the instant case, petitioners deduce the following conclusions from it:

"If, therefore, Fisher's trustee, under the ruling of this case, would have had no right to proceed directly against your petitioners, due to the fact that it nowhere appears that they had any knowledge that the pay-

ments made by Fisher to the plaintiff were preferences, or even that Fisher was insolvent—surely this result cannot be accomplished indirectly by permitting the plaintiff, after it has been forced to surrender up the payment made to it—because it did have the guilty knowledge that Fisher was acting in fraud of the law— to do what the trustee could not have done, and thus indirectly bring about a result which could not be brought about directly." It may with equal force be argued that the court was of opinion the endorser under his contract was bound only by its terms and that he could only be required to pay the note in the event that the maker did not, and left the matter there. *Bartholow* v. *Bean* was not cited.

This question is discussed at length by Judge Walter H. Sanborn of the Circuit Court of Appeals (8th Circuit) in the case of *Swarts* v. *Fourth National Bank of St. Louis,* 117 Fed. (C. C. A.) 1.

In this opinion all of the cases bearing upon the subject, both English and American, appear to have been examined. Attention is called to the fact that the statement of Mr. Justice Miller was a dictum and not authority for the conclusions stated, because the issue was not before the Supreme Court in that case at all. He quotes from *Petty* v. *Cooke* (Law Reports), 6 Q. B. 790, 794-796, in which Judge Hannan said: "I am also of the same opinion. Lord Eldon puts it that the surety is discharged when the creditor has done anything which is 'against the faith of his contract.' How can it be against the faith of his contract for the creditor to do that which it was his duty to do, namely, to receive payment? It turned out afterwards that the payment was not a good payment, and therefore the surety is not discharged." Judge Sanborn sums up his own conclusions with this convincing statement:

[7] "These opinions are well grounded in reason, clear, and persuasive. They lead to just and equitable results, and they are exactly applicable to the facts of this case. The bank was guilty of no fraud or wrong when it accepted payment from the insolvent. The indorsers, as well as the bank, knew that any payments made upon the notes by the principal debtor were liable to be recalled as a condition of the allowance of the claim of the bank against its estate if the maker of the note was adjudged a bankrupt upon a petition filed within four months of the payments. Their contract was conditioned upon this fact, and by the statute which called it into being. The acceptance of such payments was not forbidden by the moral or by the civil law. The bank did not know, and could not foresee, that the principal debtor on the note would become a bankrupt within four months from the payments. The holder of a surety's obligation may discharge it if he knowingly does any act to diminish his security or his opportunity to enforce it, or any act to increase his liability. But the acceptance of these payments did none of these things. A refusal to accept them might well have been held to be an act so likely to entail unnecessary loss upon the accommodation makers that it would discharge them. But the receipt of the money was an act of reasonable diligence—an act in the rational discharge of the duty of the bank towards the sureties. It hoped and believed that the money it received would be a payment upon the debt. If it returns it, no payment has been made by the receipt of it. The debt remains unpaid, because the money received turns out to be the property of the bankrupt estate, which the bank holds in trust for, and returns to, the estate under the law. The sureties are not discharged by the payment and satisfaction of any part of

the notes, because no payment and satisfaction were effected. They are not discharged by any act or negligence of the creditor, because it has been guilty of none which either increased their liability or diminished their security or their opportunity to enforce it. The only just and equitable conclusion is that the accommodation makers, indorsers, or sureties upon the obligations of an insolvent debtor are not discharged from liability to pay them by the innocent acceptance, by their creditor, of payments thereon from the insolvent debtor which the creditor is subsequently required to and does surrender to the latter's trustee in bankruptcy as a condition of the allowance of its claim under section 57-g of the bankrupt act."

*Second National Bank* v. *Prewett,* 117 Tenn. 1, 96 S. W. 334, 9 L. R. A. (N. S.) 581, 119 Am. St. Rep. 987, is a case in which this was also considered at length. The court said:

"The bank was then in this position: A valid payment was offered to it, which it dared not refuse on penalty of losing its indorsers. It is said, however, that Prewett & Company were insolvent and the bank knew such to be the fact. This is true, but there might never be any proceeding in bankruptcy instituted against them. In that event, the payment would continue good. The indorsers were entitled to this benefit, and, if the bank had refused when offered, they would have had just ground of complaint. What was said in *Bartholow* v. *Bean* as to the non-liability of the indorser was mere dictum. The case did not call for it. The action there was by the assignee in bankruptcy against a creditor who had received a preference to recover the amount so paid. No question of the liability of an indorser was involved."

In *Perry* v. *Van Norden Trust Company,* 118 App. Div. 292, 103 N. Y. Supp. page 545, the court said:

"Ordinarily, of course, the payment of a note by the maker terminates the liability of the indorser, but the receipt of a preferential payment, contrary to the statute, of an indorsed note, is in the contemplation of law no payment at all, and does not release the indorser."

*Northern Bank* v. *Farmers National Bank*, 111 Ky. 350, 63 S. W. 604, is interesting in that it held that such payment left the parties to the note as they originally were and, therefore, the surety was not released. The earlier case of *Bank* v. *Cooke, supra,* from that State had, as we have seen, reached a contrary conclusion. The latter case, however, does not cite the first. The same decision was reached in *Hooker* v. *Blount,* 44 Tex. Civ. App. 162, 97 S. W. 1083, and in *Watson* v. *Poague,* 42 Iowa 582, while the Code of Virginia, section 5682, provides how persons secondarily liable on negotiable notes may be discharged. The defendant's case falls within none of its provisions.

Not all laws are counsels of perfection and they sometimes point the way to strange conclusions, but in the main they are the conservative expressions of sense and judgment. To endure they must stand the pragmatic test; they must work if they are to last. What results would follow if the rule announced in *Bartholow* v. *Bean* governed banks in their every-day transactions? They would in fear and trembling receive payment from harrassed debtors striving to maintain their credit. When to take and when to refuse would be beyond the wisdom of man, for not all who are financially embarrassed fail, and not all who fail do so within the magic period of four months. Must a bank say to a customer, "you seem to be in trouble and I cannot permit you to pay me. I might

perchance have to refund to some trustee in bankruptcy and so lose the security of your indorsers." If in such an extremity it called a convention of these indorsers and if it received their sanction to act, might not they be afterwards told that they had solemnly sanctioned a fraud and should be left as they were? The bank might lose the offer of payment by the maker and the opportunity to recover from an indorser whom it could not sue.

On the other hand, how could these indorsers be injured by acceptance. In the event that the payee was forced to make restitution, they would be exactly where they were before and would have to do no more than they had originally contracted to do, which was to pay the note if the maker did not. Acceptance of payment under any condition might help them and could not possibly hurt them. Any other rule would not work. We are of opinion that this assignment of error is also not well taken.

That in which it is charged that equity has no jurisdiction has been abandoned.

It follows that the judgment of the trial court in overruling the demurrer to the bill and in decreeing judgment for the plaintiff should be affirmed, and it is so ordered.

*Affirmed.*