526 A.2d 986

Samuel L. **ALBERSTADT**

v.

**SOVRAN BANK/MARYLAND.**

**No. 1552, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

June 12, 1987.

Alan S. Kerxton (Kerxton & Cohen, Chtd., Bethesda, on the brief; Samuel L. Alberstadt and Niro, Scavone, Haller & Niro, Ltd., Chicago, Ill., on the brief and of counsel), for appellant.

Edward C. Dolan (Jeanne M. Crouse and Hogan & Hartson on the brief), Bethesda, for appellee.

Argued before MOYLAN, WILNER and ROBERT M. BELL, JJ.

WILNER, Judge.

There is a single issue before us in this appeal; it has to do with the statute of limitations. The underlying facts are fairly straightforward and largely uncontested.

On May 19, 1981, AMS Construction, Inc. (AMS) borrowed $60,000 from Sovran Bank[1] and signed a promissory note agreeing to repay that amount, with interest, within 90 days. Along with two other officer/stockholders of AMS, appellant endorsed the note as a guarantor. On August 6, 1981—11 days before the due date—AMS paid the note, together with $2,762 in interest. Forty-five days later—on September 16, 1981—an involuntary petition in bankruptcy was filed against AMS in the U.S. Bankruptcy Court for the District of Maryland.

At some point, the trustee in bankruptcy asserted that the $62,762 payment, along with certain other payments made by AMS to Sovran within 90 days of the bankruptcy, represented voidable preferences under 11 U.S.C. § 547(b), and he demanded that Sovran pay those amounts to him. In July, 1982, Sovran informed appellant that the bank had "been petitioned" and demanded a meeting to discuss the bankruptcy "and your liability to the bank."[2]

The parties met on August 5, 1982, although precisely what occurred at that meeting, beyond some general discussion about the trustee's demand, is in some dispute. In an affidavit filed in support of Sovran's motion for summary judgment, the bank officer who attended the meeting stated that what was discussed was "the potential need for the [bank] to make demand upon the [guarantors] in the event that the United States Bankruptcy Court set aside any part of the payment" but that "demand upon [appellant] for payment of any potential eventual liability was *not* made by or on behalf of the [bank] at the said August 5, 1982 meeting...." (Emphasis added.) Contrariwise, appellant stated in his affidavit that Sovran officials told him then that "I was liable for AMS's preferential payment and demanded that I pay either [Sovran] or the AMS trustee,"

---

1. The lender was actually Sovran's predecessor, Suburban Trust Co. For convenience, we shall refer to the bank as Sovran.

2. Sovran first wrote to appellant on July 2, 1982. On July 23, it sent a follow-up letter along with a financial statement form that it requested appellant to complete prior to the meeting.

and that, in response, "I stated that I was financially unable to pay either [Sovran] or the trustee, and therefore would not." [3] Appellant attested that he heard nothing more from Sovran until June 6, 1985.

On September 14, 1982, Sovran and the trustee reached a settlement. In a Joint Motion filed in the Bankruptcy Court that day, they acknowledged that (1) transfers had been made by AMS to Sovran within 90 days of the bankruptcy on antecedent unsecured debts in the amount of $67,509 (which amount includes the $62,762 at issue here), (2) that represented more than Sovran, as an unsecured creditor, would receive in distribution under Ch. 7 of the Bankruptcy Act,[4] (3) if those transfers had not been made, Sovran would have an unsecured claim for $67,509 and would receive a distribution of "at least 25%" of that claim, or $16,877. Accordingly, it was agreed that Sovran would retain, at least temporarily, $16,877, that it would return to the trustee the balance of $50,632, that, if the ultimate distribution to unsecured creditors was less than 25% of allowed unsecured claims, Sovran would promptly refund to the trustee that part of the $16,877 that exceeded the percentage distribution ultimately made, together with interest at 10% per annum, but that, if the ultimate distribution exceeded 26% of allowed unsecured claims, the trustee would make an additional distribution to Sovran of an amount that would give Sovran 1% less than the percentage distribution made to other unsecured creditors.

Upon that Joint Motion, the Bankruptcy Court entered an order, also dated September 14, 1982, approving the settlement and directing Sovran to pay over the $50,632 in accordance with it. Sixteen days later, Sovran paid the money to the trustee.

---

**3.** These assertions were also made by appellant in answers to interrogatories.

**4.** *See* 11 U.S.C. § 547(b)(5).

At some point not clear from the record, the AMS bankruptcy proceeding was closed. On August 14, 1985, Sovran wrote to appellant, informing him that the bankruptcy proceeding had been closed, that no additional distribution had been made, and that the bank could "now fix with certainty the outstanding balance." Demand was made for $68,986, which included interest at the rate stated in the note (1¼% over prime) through August 12, 1985. Appellant refused to make payment, and, on September 13, 1985, Sovran filed suit in the Circuit Court for Montgomery County.

Both sides moved for summary judgment, appellant's defense being based solely on the statute of limitations. His argument below, as it is here, was that any cause of action that the bank had against him as a guarantor had accrued at least by July 2, 1982, when the bank acknowledged its awareness of the trustee's claim that the August, 1981 payment constituted a preference and his demand that the bank turn over the money to him. Under that theory, the action was not filed within the three-year period allowed by Md.Code Ann. Cts. & Jud.Proc. art., § 5–101. The bank argued that its cause of action against appellant did not accrue until the September 14, 1982 order of the Bankruptcy Court approving the settlement effected with the trustee, and that the action was therefore timely filed, albeit by one day.

After hearing argument, the court concluded that the action was timely filed and therefore granted the bank's motion. Judgment in the amount of $93,341 plus $9,334 attorneys' fees and costs was entered, and this appeal followed. The issue is simply when Sovran's action against appellant accrued—on September 14, 1982, as asserted by the bank, or at some earlier point, as asserted by appellant.

This is a matter of first impression in Maryland. Indeed the parties' research and our own reveal only one case in the country in which an analogous circumstance has been considered, and that case is not terribly enlightening. In *Chemical Bank New York Trust Company v. Amory*, 27

A.D.2d 730, 277 N.Y.S.2d 459 (1967), *aff'd* 21 N.Y.2d 832, 288 N.Y.S.2d 916, 235 N.E.2d 918 (1968), the defendant guaranteed a demand note for $52,000. The maker paid the note on November 6, 1958, and a week later, on November 13, filed a voluntary petition in bankruptcy. Presumably on the trustee's petition, the Bankruptcy Court later determined that some $28,000 of the payment constituted a preference and so ordered the payee—Chemical Bank—to pay that sum over to the trustee. The bank did so on February 1, 1961. In May, 1966, the bank sued the guarantor to recover the payment.

The guarantor moved to dismiss the action on the grounds of the statute of frauds, limitations, and release, the limitations question being governed by New York's *six*-year statute of limitations. Reversing the trial court's denial of that motion, the appellate division, concluded, at 460–61 of 277 N.Y.S.2d:

> "On a demand note the obligation of a guarantor attaches on execution and delivery and plaintiff could have sued upon any default in payment of the obligation. If the preferential payment was, as plaintiff contends, illegal and no payment at all (cf. *Perry v. Van Norden Trust Co.*, 118 App.Div., 288, 103 N.Y.S. 543, rev'd 192 N.Y. 189, 84 N.E. 804), no obstacle existed to institution of suit against defendant within the statutory period. Even a provisional payment by the maker of the note would not extend the statute of limitations, unless such payment was made as the agent of the guarantor (*Peoples Trust Co. of Malone v. O'Neil*, 273 N.Y. 312, 313, 7 N.E.2d 244). Plaintiff's contention that there was a period of repose or suspension from March 6, 1958, the date of the last payment on the obligation, to February 1, 1961, the date of payment by plaintiff to the trustee, is rejected."

That was the extent of the Court's analysis. The New York Court of Appeals affirmed by per curiam order, giving no reasons at all. It characterized the bank's argument as follows:

"The plaintiff appealed to the Court of Appeals, contending that the period of limitation was suspended from November 6, 1958 to February 1, 1961 and, in the alternative, that a new period of limitation commenced on February 1, 1961 because a new cause of action accrued on the repayment of the payment set aside as preferential." *Chemical Bank, supra*, 288 N.Y.S.2d at 916, 235 N.E.2d at 918.

We believe that some further analysis is required, and, upon that analysis, we are led to a different conclusion than that reached by the New York Courts. We shall affirm the judgment of the Circuit Court.

Appellant's guarantee was a guarantee of payment; the endorsement so states. Appellant therefore engaged that, if the instrument was "not paid when due," he would pay it "according to its tenor without resort by the holder to any other party." Md.Code Ann.Comm.Law art., § 3–416(1). His liability is on the instrument; it is "indistinguishable from that of a co-maker." *Etelson v. Suburban Trust Co.*, 263 Md. 376, 380, 283 A.2d 408 (1971).

• In both the trial court and at oral argument before us, appellant conceded that he was not released or discharged as a guarantor by the August, 1981 payment.[5] That interesting issue is therefore not before us in this case, and we do not decide it. *See Horner v. First Nat. Bank*, 149 Va. 854, 141 S.E. 767 (1928). We do, however, have to consider in another context the effect of that August 6 payment.

There is nothing in this record to indicate that the payment was not valid when made. There is nothing to show

---

5. Comm.Law art., § 3–601(3)(b), with exceptions not relevant here, provides that the liability of all parties to an instrument is discharged "when any party who has himself no right of action or recourse on the instrument ... [i]s discharged under any provision of this title...." Again with exceptions not relevant here, "[t]he liability of any party is discharged to the extent of his payment or satisfaction to the holder...." Sec. 3–603(1).

that it was not a duly authorized act of AMS or that it constituted a fraud on anyone. The bank had no choice but to accept the payment, and, indeed, had it refused acceptance, it may well have forfeited its rights against the guarantors. *See Horner, supra.* But for the fact that, under the Federal Bankruptcy Law, part of it constituted a preferential transfer, which the trustee could and did seek to have set aside, that payment would indeed have discharged the liability of the guarantors.

What, then, is the effect of the voidability of the payment? A payment is not illegal or fraudulent simply because it meets the criteria set forth in the Bankruptcy Law (11 U.S.C. § 547(b)) for a preferential transfer. Nor is such a payment void *ab initio.* It is simply, by Act of Congress, made voidable at the election of the trustee.

In that regard, two things must be kept in mind. First, although the trustee has a clear and positive duty to collect and preserve the assets of the bankrupt's estate, including preferential transfers, it appears that the trustee has some discretion in deciding whether to set aside any particular preference, and in what amount. *See In re Sapolin Paints, Inc.,* 11 B.R. 930, 939 (U.S.Bankr.Ct.E.D.N.Y.1981): "The decision as to whether to void a preference, or not, is one for the trustee ... to make. It is a decision that is to be made for the benefit of the creditors." Second, and perhaps more important, the alleged preference does not become void simply upon declaration by the trustee. To recover the funds, the trustee must take affirmative steps, generally in the Bankruptcy Court, and obtain a judicial determination that the transfer qualifies as a preference under § 547(b) and an order setting it aside. *See Fischer v. Pauline Oil & Gas Co.,* 309 U.S. 294, 301–02, 60 S.Ct. 535, 538–39, 84 L.Ed. 764 (1940); *Federal Deposit Ins. Corp. v. Davis,* 733 F.2d 1083, 1084 (4th Cir.1984); *Matter of Buchman,* 600 F.2d 160, 163, n. 7 (8th Cir.1979). Moreover, in such a proceeding, the trustee bears the burden of proof on

the issue of whether the transfer meets the requirements of § 547(b). *See* § 547(g).

It is evident, then, that until such time as the trustee elected to set aside the payment to Sovran and obtained the order of the Bankruptcy Court actually setting aside 75% of the $67,509 aggregate payments (including 75% of the $62,-762 at issue here), Sovran was fully entitled to retain those funds, to treat the loan as paid, and to consider the proceeds as its own. During that interim, then—until September 14, 1982—Sovran had no claim or right of action against appellant or anyone else with respect to the AMS loan. Appellant's argument that Sovran had a cause of action when it first learned of the trustee's intention to set aside the payment assumes a significance to that intention that is simply not warranted. The trustee's demand was just that—a demand; the bank was free to acquiesce or resist, as it saw fit, until the Bankruptcy Court, upon petition of the trustee, determined the amount of the preference, set it aside, and ordered the bank to pay the trustee. It was then, and as of then, that the payment by AMS became void and a loan balance was restored; it was then, and as of then, that Sovran, having a judicially created past-due loan on its books, first had a cause of action against appellant. Whether, in anticipation of a probable loss, Sovran made demand upon appellant in August, 1982, as contended by appellant, is of no consequence, for, despite any such demand, it had no judicial remedy at that point to enforce collection.

Our problem with the New York Courts' conclusions in the *Chemical Bank* case is twofold. First, they seem to have rested on the notion that the preferential payment was somehow either void *ab initio* or in the nature of a "provisional" payment. That may be the effect under New York State law (and we observe that only New York cases are cited for those propositions), but it is not the effect under the Federal Bankruptcy Act or under Maryland law. The AMS payment was valid when made and remained valid until set aside. Second, this is not a question, as was

apparently argued in *Chemical Bank,* of "suspending" the statute of limitations. It is rather a question of when Sovran's cause of action against appellant accrued.[6]

The other case relied upon by appellant—*United States v. Fidelity-Baltimore National Bank & Trust Company,* 166 F.Supp. 1 (D.Md.1958)—we find inapposite. The government there sued its drawee bank for accepting and paying checks upon which the payee's signature had been forged. The drawee bank, in a third-party action, sued other banks that had endorsed the checks in the chain of negotiation, contending that, as subsequent endorsers, they had warranted the signature of the payee. The third-party action was brought more than three years after the third-party defendants had endorsed the checks, and they raised the statute of limitations as a defense. The court credited that defense and granted their respective motions for summary judgment, concluding that the drawee bank's cause of action for breach of warranty accrued when the checks were negotiated under the forged endorsement and not when it actually suffered a loss. Sovran seeks to distinguish that case on the theory that the payment there was "void" rather than merely "voidable," but that may be a bit too simplistic. The question is merely when the cause of action arose: the action for breach of warranty arose when the warranty was breached, which was when the endorsing bank endorsed the check; the action here arose when, as a result of the Bankruptcy Court order, the loan became in default.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.

---

**6.** The New York intermediate appellate court observed that the obligation at issue was a demand note, upon which the bank could have sued the guarantor at any time, even before payment by the maker. That, we assume, was the premise for the notion of "suspending" the statute of limitations. Here, of course, the note had a fixed maturity, and, as the note was paid timely, there was no preexisting cause of action against the guarantors.